Carol WHITWORTH, Respondent,

v.

McBRIDE & SON HOMES, INC., et al., Appellants.

No. WD 72466.

Missouri Court of Appeals, Western District.

April 5, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 3, 2011.

Application for Transfer Denied Aug. 30, 2011.

Jill A. Morris and Robert L. Ortbals, Jr., Kansas City, MO, for appellants.

Mark A. Jess, Christie E. Jess and John J. Ziegelmeyer III, Kansas City, MO, for respondent.

Before Division Three: CYNTHIA L. MARTIN, Presiding Judge, JAMES E. WELSH, Judge and GARY D. WITT, Judge.

CYNTHIA L. MARTIN, Judge.

McBride & Son Homes, Inc., McBride & Son Homes Kansas City, LLC, (collectively "McBride & Son"),[1] and Dennis Shriver ("Shriver"),[2] former general manager of

---

**1.** The McBride & Son entities are referenced in a collapsed and collective fashion by Carol Whitworth's petition, by all of the pertinent pleadings in the legal file (including the motion to compel arbitration), by the trial court's order denying McBride & Son's motion to compel arbitration, and by McBride & Son in its brief filed in this appeal. We do the same, therefore, in our Opinion.

**2.** McBride & Son and Shriver are referred to collectively from time to time in this Opinion as "Defendants."

McBride & Son, appeal from the trial court's order denying their motion to compel arbitration of Carol Whitworth's ("Whitworth") employment related claims. We affirm.

## Facts and Procedural History

On June 30, 2005, McBride & Son presented Whitworth with a Sales Manager Employment Contract ("Employment Contract"). Prior to this time, Whitworth had worked for several years with McBride & Son as an independent contractor. McBride & Son is in the business of developing and selling residential property, primarily single family homes. The Employment Contract provided that Whitworth would be paid commissions upon the closing of any sales contracts she negotiated, including closings within the ninety (90) day period following her termination.

The Employment Contract addressed arbitration. The Employment Contract provided:

BINDING ARBITRATION CLAUSE

I agree that I will settle any and all claims, disputes or controversies arising out of or relating to my status as an employee, exclusively by final and binding arbitration before a neutral Arbitrator. Such claims included [sic] (without limitation) claims under federal, state and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with Disabilities Act, the law of contract, and the law of tort.

The Employment Contract did not describe the procedures or guidelines for arbitration. The Employment Contract was signed by Whitworth and by "General Manager, Charles Heiser Jr."

On July 8, 2005, and thus about a week after Whitworth had already signed the Employment Contract, Whitworth was asked to complete an application for employment ("Application").[3] The Application provided:

In consideration of my employment, I agree to conform to the rules and regulations of the Company and understand that my employment and compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of either the Company or myself and without notice or liability for wages or salary except such earned at the date of such termination. I understand that no manager, supervisor, or representative of management, other than the president (or ranking officer) has any authority to enter into an agreement for employment for any specific period of time, or to make any agreement contrary to the foregoing.

Immediately above the signature line, the Application provided: **"THIS APPLICATION CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY EITHER YOU OR THE COMPANY."** The referenced arbitration provision stated:

I agree that I will settle any and all claims, disputes or controversies arising out of or relating to my application or candidacy for employment, employment, promotion, change in position, or cessation of employment with the Company, exclusively by final and binding arbitration before a neutral Arbitrator. Such claims include (without limitation) claims under federal, state, and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the

---

**3.** The Defendants acknowledge in the statement of facts in their Brief that Whitworth completed the Application "[a]bout a week after signing the Sales Manager Employment Contract."

Civil Rights Act of 1991, the Americans with Disabilities Act, the law of contract, and the law of tort.

The Application was signed by Whitworth. The Application was not signed by a representative of McBride & Son.

On July 8, 2005, Whitworth was also presented with the McBride & Son's Employment Dispute Arbitration Agreement ("Arbitration Agreement"). The Arbitration Agreement provided:

> The undersigned hereby agrees that if he/she pursues any claims against McBride & Son or any affiliated or related entity, involving either acts or omissions, or both, because of any occurrence regarding any one or more of my hiring, employment, promotion, failure to promote, working conditions, employee benefits, or my employment's termination, that all such claims shall be resolved by final and binding arbitration before a neutral arbitrator. Such claims include, but are not limited to, claims under federal, state and local statutory or common law, including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disabilities Act, any claim arising under any employee benefit plan or program, whether based on federal or state law, and any claims based on contract law and/or tort law. *The undersigned further acknowledges that he/she must use McBride & Son's established Dispute Resolution/Mediation and Arbitration Procedures to resolve any disputes under this Agreement.*
>
> THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY EITHER YOU OR THE COMPANY.

(Emphasis added.) Whitworth signed the Arbitration Agreement. The Arbitration Agreement was not signed by a representative of McBride & Son.

Though not so stated in the Arbitration Agreement, the "Dispute Resolution/Mediation and Arbitration Procedures" referenced in the Arbitration Agreement are set forth in McBride & Son's Employee Handbook ("Handbook"). It appears that Whitworth received a copy of the Handbook at or around the time she signed the Application and Arbitration Agreement. The Handbook provides:

> This Handbook has been prepared to furnish you with information about the Company.... The information, policies and benefits described herein are regularly reviewed, and may be revised or changed from time to time with or without prior notice as the Company deems appropriate and advisable.
>
> The contents of this handbook [sic] are presented as a matter of information only.... *None of the guidelines, policies or benefits in this manual are intended, by reason of their publication, to confer any contractual rights or privileges upon you. This is not a contract of employment. In fact, you should understand that no representative of the Company, other than the President or his authorized representative, have any authority to enter into any agreement for employment for any specified period of time or to make any contract of employment and that any such agreement made by the President or his authorized representative must be in writing, dated, and executed by the parties to the contract.*

(Emphasis added.) The Handbook identifies "John Eilermann" as the President of McBride & Son.

The Handbook provides in Section VI, General Policies, paragraph Y that "**THIS HANDBOOK CONTAINS A BINDING**

ARBITRATION PROVISION WHICH MAY BE ENFORCED BY EITHER YOU OR THE COMPANY." The Handbook continues to describe the specific procedures to be followed to pursue "dispute resolution/arbitration."

Page 32 of the Handbook is entitled "statement of understanding," and includes a signature block for "employee." The statement of understanding appears designed to secure an employee's acknowledgment of receipt and understanding of the Handbook. The statement of understanding was not signed by Whitworth at the time she received the Handbook. The Handbook does not include a signature block for McBride & Son, and was not signed by McBride & Son.

On February 7, 2006, nearly seven months after the Application and the Arbitration Agreement were signed by Whitworth, Whitworth was presented with another statement of understanding ("Statement"). The Statement is nearly identical to the statement of understanding appearing on page 32 of the Handbook.[4] The Statement provides:

> I acknowledge that I have received a copy of the McBride & Son Management Co. Employment Handbook and agree to abide by it as well as all the rules and regulations of the Company....
>
> I understand and agree that this Handbook is a statement of current general employment policies of the Company and supersedes previous employment policies which deal with the subjects set forth in the Handbook, and that it is my responsibility to read and be familiar with the Handbook and any subsequent changes. *I understand that the policies stated in this Handbook are established and declared unilaterally by*

> *the Company and do not, and are not intended to, establish a contractual or an employment relationship with me. I recognize that the Company may modify, revoke, suspend, terminate, or change any or all of its policies in whole or in part, at any time, with or without notice to me.* However, I understand that the Company will attempt to inform me, without being bound to do so, of any changes or additions to its employment policies, as soon as practicable, by publishing and distributing changes to this Handbook. *I understand and agree that this Handbook is not intended to be an employment contract either expressed or implied, nor shall it serve as an independent basis for a contract of employment. I understand that none of the benefits or policies in this Handbook are intended by the reason of their publication to confer any rights or privileges upon me,* or to entitle me to remain employed by the Company.

> The Company acknowledges employees have the right to terminate their employment relationship at any time for any reason .... the Company has the same right as well.... *I understand any binding agreement must be in writing and signed by both the Company's President and me* ....

> THIS HANDBOOK CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY EITHER YOU OR THE COMPANY.

(Emphasis added.) Whitworth signed the Statement. No representative of McBride & Son signed the Statement.

---

4. The only difference is that the statement of understanding in the Handbook includes a final paragraph discussing the application process, consistent with the fact the Handbook was given to Whitworth on or about July 8, 2005, when she signed the Application and Arbitration Agreement.

On June 25, 2008, Shriver terminated Whitworth. At the time of her termination, Whitworth was 65 years old. On June 28, 2008, Whitworth was presented with a Separation Agreement which offered to pay Whitworth her commissions for any sales that closed within ninety days of the date of her termination in exchange for a release of any and all claims against McBride & Son. The Separation Agreement thus offered Whitworth the same compensation she had been promised in the Employment Contract. Whitworth did not sign the Separation Agreement.

On December 1, 2009, Whitworth filed an amended petition in the Circuit Court of Clay County against the Defendants. Whitworth alleged that Shriver, in his capacity as general manager for McBride & Son, discriminated against her based on her gender and age in violation of the Missouri Human Rights Act.

On December 30, 2009, the Defendants filed a motion to compel arbitration. The motion alleged that a valid and binding arbitration agreement had been entered into between McBride & Son and Whitworth. Whitworth opposed the motion, arguing that a valid and binding arbitration agreement had not been entered into.

On April 8, 2010, following a hearing, the trial court entered its order denying the Defendants' motion to compel arbitration.

 This timely appeal follows.[5]

## Standard of Review

 We review *de novo* the issue of whether a dispute is subject to arbitration. *Frye v. Speedway Chevrolet Cadillac,* 321 S.W.3d 429, 435 (Mo.App. W.D.2010). That review requires us to consider three factors:

First, we must "determine whether a valid arbitration agreement exists." *Nitro Distrib., Inc. v. Dunn,* 194 S.W.3d 339, 345 (Mo. banc 2006) (citations omitted). Second, if a valid arbitration agreement exists, we must determine "whether the specific dispute falls within the scope of the arbitration agreement." *Id.* Third, if a valid arbitration contract exists, and if the subject dispute is within the scope of the arbitration provision, then we must determine whether the arbitration agreement is subject to revocation under applicable contract principles. *See Kansas City Urology, P.A. v. United Healthcare Servs.,* 261 S.W.3d 7, 11, 14 (Mo.App. W.D.2008).[6] "In making these determinations, [we] should apply the usual rules of state contract law and canons of contract interpretation." *Nitro Distrib., Inc.,* 194 S.W.3d at 345.

*Frye,* 321 S.W.3d at 434–35. If the trial court's ruling on a motion to compel arbitration include factual findings which bear on these three factors, then the factual findings will be affirmed if they are supported by substantial evidence, and are not against the weight of the evidence. *Manfredi v. Blue Cross and Blue Shield of*

---

**5.** "This Court recognizes the appealability of orders denying arbitration despite the fact that such orders are not final judgments, under the influence, if not the command of provisions of the Federal Arbitration Act and the Missouri Uniform Arbitration Act relating to appealability of such orders." *Lawrence v. Beverly Manor,* 273 S.W.3d 525, 527 n. 2 (Mo. banc 2009) (*citing* 9 U.S.C. section 16(a)(1)(B) and section 435.440.1).

**6.** "It is in evaluating this third factor that our courts discuss whether a contract should be revoked because it is procedurally and substantively unconscionable. However, the issue of whether an arbitration contract should be revoked because it is unconscionable is never reached if the agreement is determined under the first factor to lack the necessary indicia of a valid and enforceable contract." *Frye,* 321 S.W.3d at 435 n. 11.

*Kansas City,* 340 S.W.3d 126 (Mo.App. W.D. 2011).

## Analysis

Defendants assert three points on appeal. Each point generally asserts that the trial court erred in denying the Defendants' motion to compel arbitration and follows with a specific argument supporting this general proposition. First, the Defendants contend that the trial court erroneously applied the law by concluding that "the arbitration agreements"[7] were not supported by consideration. Second, the Defendants contend that the trial court erroneously applied the law by concluding that "the arbitration agreements" were unconscionable. Third, the Defendants contend that the trial court erred because it declined to consider whether Shriver could enforce "the arbitration agreements."

Point One addresses the first factor we must evaluate in reviewing a motion to compel arbitration—whether a valid and enforceable contract to arbitrate exists. Because Point One is dispositive of this appeal, we need not address Points Two or Three.

## Point One

Defendants contend in Point One that "the arbitration agreements" were valid and enforceable because they were supported by consideration in the form of the initial offer of at-will employment, and "binding promises to pay commissions and regarding arbitration procedures."

 Missouri substantive law governs whether a valid arbitration contract exists. *State ex rel. Vincent v. Schneider,* 194 S.W.3d 853, 856 (Mo. banc 2006).[8] "It is a firmly established principle that parties can be compelled to arbitrate against their will only pursuant to an agreement whereby they have *agreed* to arbitrate claims." *Morrow v. Hallmark Cards, Inc.,* 273 S.W.3d 15, 21 (Mo.App. W.D.2008). Though employers and employees are free to enter into an agreement to arbitrate disputes, the agreement is not valid unless it reflects the essential contract elements required under Missouri law. *Id.* at 22. It follows that arbitration may not be unilaterally imposed on a party when there is not a valid and enforceable agreement to arbitrate. *Dunn Indus. Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 427–28 (Mo. banc 2003). The elements required to form a valid contract in Missouri are "offer, acceptance, and bargained for consideration." *Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661, 662 (Mo. banc 1988). As the party asserting the existence of a valid and enforceable contract to arbitrate, the Defendants "bore the burden of proving that proposition." *U.S. Bank v. Lewis,* 326 S.W.3d 491, 495 (Mo.App. S.D.2010).

---

**7.** All three of the Defendants' Points Relied On discuss "the arbitration agreements" in the plural, and fail to identify any particular document or agreement (or combination thereof) alleged to constitute the contract to arbitrate they believe the trial court erroneously failed to enforce. The Points Relied On thus leave this Court to speculate about which of the several documents and/or agreements presented to Whitworth, and referenced in the factual summary, are believed by the Defendants to be controlling.

**8.** The Defendants in their brief, at various points, address whether the Federal Arbitration Act ("FAA"), 9 U.S.C. section 1 *et seq.* or the Missouri Uniform Arbitration Act, Chapter 435, RSMo ("MUAA") controls interpretation and enforcement of the Program. We need not answer this question. Both the FAA and the MUAA presume, in the first instance, the presence of a legally enforceable contract to arbitrate. *See, e.g., Houlihan v. Offerman & Co.,* 31 F.3d 692, 694–95 (8th Cir.1994) ("Before a party may be compelled to arbitrate under the Federal Arbitration Act, the district court must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties. . . .").

The Defendants focus their discussion in Point One on consideration, the third essential element of a contract. However, they must also establish the other essential elements of a contract—offer and acceptance. Our *de novo* review requires us to ascertain whether the Defendants have sustained this burden. We conclude that they have not.

We observe at the outset that our ability to discern whether the Defendants have met their burden to establish the existence of a valid contract to arbitrate is hampered by the Defendants' failure to identify exactly which "agreement" of the several involved in this case constitutes the enforceable arbitration contract. By their frequent reference to "the arbitration agreements," Defendants acknowledge that no single "agreement," standing alone, suffices to form an enforceable arbitration contract. Yet, Defendants are imprecise in articulating the combination of agreements or documents on which they rely to allege the existence of an enforceable arbitration contract. At a minimum, it is evident that the Defendants require the Handbook to be one of the "collective" documents forming an enforceable arbitration contract, as it is the Handbook which sets forth the dispute resolution procedures the Defendants seek to enforce. We must determine, therefore, whether the Handbook, in combination with other documents signed by, or provided to, Whitworth constitutes a valid and enforceable arbitration contract.

■ We begin with the Employment Contract. The Employment Contract generally references Whitworth's agreement to arbitrate claims. However, the Employment Contract does not describe the applicable arbitration procedures. The procedures which the Defendants seek to enforce are contained in the Handbook.

However, the Employment Contract makes no reference to the Handbook. Moreover, it appears Whitworth did not receive the Handbook until about a week after she signed the Employment Contract. The Defendants have not established, therefore, that the parties had any intent to treat the Handbook and the Employment Contract as a "single contract." *Cf. Martin v. U.S. Fid. & Guar. Co.*, 996 S.W.2d 506, 510 (Mo. banc 1999) ("Where the agreement of the parties is evidenced by several documents that refer to each other, are closely related, and constitute one complicated interdependent transaction, the meaning of those documents must be gleaned from the entire transaction and not simply from isolated portions of a single document."). This conclusion is bolstered by the fact that the Employment Contract includes an integration clause which states: "[t]his instrument contains the entire agreement between the parties. No provision of this Employment Contract shall be changed or modified except by written instrument executed by the parties." The Handbook was never signed by McBride & Son. By its express terms, therefore, the Employment Contract forecloses the possibility of incorporating the Handbook into the Employment Contract. Thus, whatever the import of the Employment Contract,[9] that agreement never "offered" the Handbook's dispute resolution procedures as a term for Whitworth's "acceptance." As such, the Employment Agreement is not a contract obligating Whitworth to arbitrate claims in accordance with the Handbook's dispute resolution procedures.

■ We next turn to the Application and Arbitration Agreement, which were signed a week *after* the Employment Contract. Both documents include a general agreement to arbitrate claims, employing

9. See *infra*, note 10.

language very similar to that found in the Employment Contract. In addition, however, the Arbitration Agreement specifically reflects Whitworth's agreement to abide by McBride & Son's "established Dispute Resolution/Mediation and Arbitration Procedures." The parties agree that the Handbook contains the "Dispute Resolution/Mediation and Arbitration Procedures" referenced in the Arbitration Agreement. As previously noted, the Handbook was apparently provided to Whitworth at the same time she signed the Application and Arbitration Agreement. As the Handbook is referenced in the Arbitration Agreement, it appears the parties intended to read the two documents together. *Id.*

We nonetheless conclude that the combination of the Arbitration Agreement and the Handbook fail to establish an offer and acceptance to enter into a binding arbitration agreement. We reach this conclusion based on the provisions of the Handbook which reflect McBride & Son's express intent that the Handbook's terms and provisions are not contractual.

The Handbook advises that its contents are "informational" only. The Handbook announces that:

> *None of the guidelines, policies or benefits in this manual are intended, by reason of their publication, to confer any contractual rights or privileges upon you. This is not a contract of employment.*

Whitworth did not sign the Handbook when she received it in July, 2005. However, on February 7, 2006, Whitworth signed the Statement acknowledging receipt and understanding of the Handbook. The Statement reiterated the intended non-contractual nature of the Handbook:

> *I understand that the policies stated in this Handbook are established and declared unilaterally by the Company and do not, and are not intended to,*

*establish a contractual or an employment relationship with me.*

The Statement also provided that: *"I understand that none of the benefits or policies in this Handbook are intended by reason of their publication to confer any rights or privileges upon me."*

Neither the Handbook nor the Statement excepted the arbitration provisions from the broad sweep of the "informational only/this is not a contract" provisions. Notwithstanding, the Defendants argue on appeal that the "informational only/this is not a contract" provisions in the Handbook apply only to "employment policies." This is a distinction without meaning. The dispute resolution procedures are no less an "employment policy" than the Handbook's provisions addressing vacation or sick days. McBride & Son could have included language in the Handbook advising that *except* with respect to the dispute resolution procedures, the Handbook's policies and procedures were informational only and non-contractual. It did not do so. Instead, McBride & Son unambiguously expressed its intent that the Handbook is not a contract. As such, the Handbook was not an "offer" to contract to which Whitworth could respond by "acceptance." This conclusion is identical to that reached by our Supreme Court. In *Johnson*, our Supreme Court held:

> McDonnell's unilateral act of publishing its handbook was not a contractual offer to its employees. The handbook was merely an informational statement.... The handbook also provided that the rules were subject to change at any time.... Since McDonnell made no offer to its employees, no power of acceptance was created in the plaintiff.

745 S.W.2d at 662–63.

The Defendants argue that the incorporation of the dispute resolution procedures into the Arbitration Agreement elevated at

least those provisions from the Handbook into a "binding contract." We disagree. The Arbitration Agreement incorporated the dispute resolution procedures by reference, and thus subject to whatever constraints or limitations were imposed on the dispute resolution procedures by the Handbook. If the dispute resolution procedures are not contractual in the Handbook, they are not magically converted into contractual provisions by cross reference to the procedures in the Arbitration Agreement.

There is an even more fundamental problem with the Defendants contention. The Handbook states:

[Y]ou should understand that *no representative of the Company, other than the President* or his authorized representative, *have any authority* to enter into any agreement for employment for any specified period of time or *to make any contract of employment* and that any such agreement made by the President or his authorized representative must be in writing, dated, and executed by the parties to the contract.

(Emphasis added.) The trial court found:

[T]he very document that contained what [McBride & Son] admitted were the material procedural terms of the agreement to arbitrate stated not only that [McBride & Son] could revoke, modify or terminate any policy at any time *[but] also informed Whitworth that no 'agreement' could be binding on [McBride & Son] unless it was signed by both her and the Company's*

*President."* ... None of the "agreements" upon which [McBride & Son] rely is signed by any President of the Company.

(Emphasis added.) The Handbook and the Arbitration Agreement are not signed by the President of McBride & Son. In fact, they are not signed by *any* representative of McBride & Son.[10] As a result, we are all the more persuaded that McBride & Son did not intend the Arbitration Agreement to create a binding contract. McBride & Son cannot selectively characterize the Arbitration Agreement and the incorporated provisions from the Handbook as a binding arbitration contract when the same document could not be enforced by Whitworth against McBride & Son.

We conclude that the Defendants have not established that the Arbitration Agreement and the incorporated provisions of the Handbook possess the essential contract elements of offer and acceptance.

■ Assuming, *arguendo,* that the Defendants could overcome this obstacle, we would nonetheless conclude that the trial court did not erroneously declare or apply the law in finding that the "arbitration agreements" were not supported by adequate consideration. " 'Consideration' ... generally consists of either a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Morrow,* 273 S.W.3d at 25. The Defendants argue that McBride & Son provided consideration for

---

**10.** The only document signed by McBride & Son is the Employment Contract. However, it was not signed by the President of McBride & Son (identified in the Handbook as John Eilermann). According to the Handbook, *"any binding agreement must be in writing and signed by both the Company's President and [Whitworth]."* Given this constraint, the Employment Contract was arguably not an enforceable contract—as it was signed by

someone without the authority to bind McBride & Son. Apparently, McBride & Son did not believe the Employment Contract could be enforced as a binding contract, as the Company sought to secure Whitworth's signature on a Separation Agreement following her termination which promised to pay Whitworth, in exchange for a full release, the commissions she had already been "promised" by the Employment Contract.

the "arbitration agreements" in three forms: (1) the initial offer of employment to Whitworth, which was accepted; (2) a binding promise to pay commissions; and (3) a binding promise to abide by the dispute resolution procedures.

### Initial Offer of Employment as Consideration

The Defendants maintain that McBride & Son's initial offer of at-will employment to Whitworth in exchange for her promise to arbitrate all employee claims was sufficient consideration to form a valid and binding agreement.[11]

The Defendants concede that in *Morrow*, we held that the offer of continued at-will employment to an existing at-will employee does not provide adequate consideration for an arbitration contract enforceable after termination of employment. *Id.* at 27. However, the Defendants attempt to distinguish this case from *Morrow*, arguing Whitworth agreed to accept an *initial* at-will employment offer, not to continue existing at-will employment.

We need not detain ourselves with a discussion about the legal distinction, if any, between accepting an at-will employment offer and agreeing to continue an at-will employment relationship for purposes of providing consideration for an enforceable arbitration contract. That is because there is no practical distinction between the facts of this case and *Morrow*. Here, Whitworth had been working with McBride & Son as an independent contractor and, thus, in at at-will relationship which could have been terminated at any time, for several years before she was presented with the Employment Contract. Her circumstances were not, therefore, materially different from those experienced by the at-will employee in *Morrow*.

■ Moreover, as we have discussed, the Employment Contract did not incorporate the Handbook, the source of the arbitration procedures the Defendants seek to enforce. The Arbitration Agreement which does reference those procedures was not presented to Whitworth for her signature until at least a week after she signed the Employment Contract. The Statement confirming Whitworth's receipt of the Handbook was not signed until approximately seven months after Whitworth signed the Employment Contract. As a result, the Arbitration Agreement and the referenced Handbook were presented to Whitworth after she had commenced her at-will employment with McBride & Son, and thus necessarily in exchange for continued at-will employment. As in *Morrow*, the offer of continued at-will employment was not adequate consideration for the purported contract to submit all claims to arbitration.[12]

### Binding Promise to Pay Commissions

The Defendants argue that the promise to pay Whitworth commissions provided adequate consideration for an enforceable arbitration contract. The Defendants cite no authority for this proposition. The Defendants' contention is without merit.

---

11. Of course, we have already established that the Employment Contract cannot be the "arbitration agreement" the Defendants seek to enforce as it does not include or incorporate the Handbook's dispute resolution procedures. Thus, arguing that the Employment Contract provided "consideration" to Whitworth affords no benefit to the Defendants.

12. The Defendants also argue that Whitworth's signature on the Application, the Arbitration Agreement, and the Statement provides "consideration." However, as we observed in *Frye*, a "signature [will] not establish, nor replace the need for, legal consideration sufficient to support an agreement to waive the constitutional right of access to the courts." 321 S.W.3d at 438.

As an initial matter, McBride & Son's promise to pay commissions was made in the Employment Contract, which the parties entered *before* the purported Arbitration Agreement McBride & Son now seeks to enforce. "[A] preexisting duty," however, "cannot furnish consideration for a contract." *Egan v. St. Anthony's Med. Ctr.*, 244 S.W.3d 169, 174 (Mo. banc 2008). In any event, the cases cited by the Defendants address whether an agreement to pay commission can be enforced when the amount of commission is not readily calculable. They do not address whether an agreement to pay commissions is adequate consideration to support an at-will employee's relinquishment of the right to jury trial. If an employer's "promise" to continue at-will employment cannot serve as adequate consideration for an enforceable arbitration contract, it follows that the form of remuneration promised the employee is irrelevant. We conclude that the "promise" to pay Whitworth commissions did not provide consideration for an enforceable contract to arbitrate.

### Binding Promise Regarding Arbitration Procedures

Finally, the Defendants argue that their obligation to abide by the dispute resolution procedures in the Handbook constituted adequate consideration for a valid and enforceable arbitration contract. We disagree.

"Generally speaking ... if a contract contains mutual promises, such that a legal duty or liability is imposed on each party as a promisor to the other party as the promisee, the contract is a bilateral contract supported by sufficient consideration." *Frye*, 321 S.W.3d at 438. However, if one party to an agreement retains the unilateral right to modify or alter a contract, particularly without the provision of notice to the other party, then any promise by that party to be bound by the contract is rendered illusory and meaningless, and does not constitute consideration. *Frye*, 321 S.W.3d at 442.

The Handbook expressly provides:

> The information, policies, benefits described herein are regularly reviewed, and may be revised or changed from time to time with or without prior notice as the Company deems appropriate and advisable.

In the Statement, Whitworth was informed:

> I understand that the policies stated in this Handbook are established and declared unilaterally by the Company and do not, and are not intended to, establish a contractual or an employment relationship with me. I recognize that the Company may modify, revoke, suspend, terminate, or change any or all of its policies in whole or in part, at any time, with or without notice to me.

The plain and clear terms of the Handbook and the Statement leave no doubt that McBride & Son possessed the unilateral right to modify any and all of the terms of the Handbook without notice to Whitworth. Thus, the purported promise made by McBride & Son to follow the dispute resolution procedures in the Handbook is illusory.[13] *Id.* at 442–43. McBride & Son's purported agreement to be bound by the dispute resolution procedures described in the Handbook does not consti-

---

13. We note, again, that the Handbook clearly placed Whitworth and all others on notice that McBride & Son would not be bound by any agreement not signed by the President. It is difficult to conceive how McBride & Son can claim it promised to be bound by the dispute resolution procedures in the Handbook when its President never signed the Handbook or the Arbitration Agreement which incorporated the Handbook's dispute resolution procedures by reference.

tute consideration for an enforceable arbitration contract.

For the reasons herein discussed, we conclude that the Defendants have not sustained their burden to establish the existence of a valid and enforceable arbitration contract with Whitworth. The trial court did not erroneously deny the Defendants' motion to compel.

### Point Two and Three

As Point One is dispositive of this appeal we need not address the merits of Points Two or Three.

### Conclusion

We affirm the order of the trial court denying the Defendants' motion to compel arbitration against Whitworth.

All concur.