Valerie M. JOHNSON, Respondent,

v.

VATTEROTT EDUCATIONAL CENTERS, INC., Appellant.

No. WD 75472.

Missouri Court of Appeals, Western District.

Oct. 8, 2013.

Michael A. Williams and Thomas J. Hershewe, Kansas City, MO, for appellant.

Christopher M. Sanders, Clayton, MO and Whitney P. Cooney, St. Louis, MO, for respondent.

Before Division One: MARK D. PFEIFFER, P.J., and VICTOR C. HOWARD and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Vatterott Educational Centers, Inc., Rebecca Mattney, Dave Inlow, and Cheryl Tilley (collectively "Vatterott") appeal an order entered by the Circuit Court of Jackson County, which denied their motion to compel arbitration of employment discrimination claims brought by plaintiff Valerie Johnson. We affirm.

## Background

Vatterott operates a for-profit post-secondary educational institution with locations across the United States. Vatterott hired Johnson to serve as the Director of Admissions at its Kansas City campus in June of 2009. On March 15, 2010, Vatterott gave Johnson an Employee Handbook. The Employee Handbook contained a section titled "At Will Employment and Binding Arbitration Agreement" ("Arbitration Agreement"). This section was signed by Johnson and Arijana Baskot, Director of Human Resources for Vatterott. One copy of the signed Arbitration Agreement was removed from the Employee Handbook and placed in Johnson's personnel file.

Vatterott terminated Johnson's employment in March 2011. After filing a complaint with the Missouri Commission on Human Rights and obtaining a right to sue letter, Johnson sued Vatterott in the circuit court, alleging claims of racial discrimination, harassment, and retaliation, all in violation of the Missouri Human Rights Act. Vatterott moved the circuit court to stay the proceeding and compel arbitration. The circuit court denied the motion, finding that the Arbitration Agreement was not an enforceable contract but merely part of Vatterott's Employee Handbook. This appeal follows.[1]

## Standard of Review

Whether a dispute is subject to arbitration is reviewed *de novo. Morrow v. Hallmark Cards, Inc.,* 273 S.W.3d 15, 21 (Mo.App. W.D.2008) (en banc). In deciding an appeal from an order refusing to compel arbitration, we consider three issues:

First, we must determine whether a valid arbitration agreement exists. Second, if a valid arbitration agreement exists, we must determine whether the specific dispute falls within the scope of the arbitration agreement. Third, if a valid arbitration contract exists, and if the subject dispute is within the scope of the arbitration provision, then we must determine whether the arbitration agreement is subject to revocation under applicable contract principles.

1. The order denying Vatterott's motion to compel arbitration was immediately appealable. *Lawrence v. Beverly Manor,* 273 S.W.3d 525, 527 n. 2 (Mo. banc 2009) ("This Court recognizes the appealability of orders denying arbitration despite the fact that such orders are not final judgments, under the influence, if not the command of provisions of the Federal Arbitration Act and the Missouri Uniform Arbitration Act relating to appealability of such orders."; citing 9 U.S.C. § 16(a)(1)(B) and § 435.440.1, RSMo).

*Whitworth v. McBride & Son Homes, Inc.,* 344 S.W.3d 730, 736 (Mo.App. W.D.2011) (citations and internal quotation marks omitted).

### Discussion

■ Under both the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* and the Missouri Uniform Arbitration Act, chapter 435, RSMo, whether the parties entered into an enforceable arbitration agreement is a preliminary issue for the court to decide, applying Missouri law. *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 130 S.Ct. 2847, 2855–56, 177 L.Ed.2d 567 (2010); *State ex rel. Vincent v. Schneider,* 194 S.W.3d 853, 856 (Mo. banc 2006); *Whitworth,* 344 S.W.3d at 736–37 & n. 8; *Frye v. Speedway Chevrolet Cadillac,* 321 S.W.3d 429, 436 & n. 12 (Mo.App. W.D.2010); *Morrow,* 273 S.W.3d at 21.

Under Missouri law (as elsewhere), a valid contract must be based upon "offer, acceptance, and bargained for consideration." *Whitworth,* 344 S.W.3d at 737 (citing *Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661, 662 (Mo. banc 1988)).

■ In this case, the Arbitration Agreement was disseminated as part of, and contained within, Vatterott's Employee Handbook. "Under Missouri law, employee handbooks generally are not considered contracts because they normally lack the traditional prerequisites of a contract." *McIntosh v. Tenet Health Sys. Hosps., Inc.,* 48 S.W.3d 85, 89 (Mo.App. E.D.2001) (citing *Patterson v. Tenet Healthcare, Inc.,* 113 F.3d 832, 835 (8th Cir.1997) (Missouri law)). In *Johnson,* 745 S.W.2d 661, the Missouri Supreme Court held that an employee handbook which was unilaterally prepared by an employer, and subject to change by the employer at any time, could not establish enforceable contractual rights. The Court explained:

McDonnell's unilateral act of publishing its handbook was not a contractual offer to its employees. The handbook was merely an informational statement of McDonnell's self-imposed policies, providing a nonexclusive list of acts for which an employee might be subject to discipline. Several of the rules and regulations in the handbook were couched in general terms and were open to broad discretion and interpretation. The handbook also provided that the rules were subject to change at any time. Given the general language of the handbook and the employer's reservation of power to alter the handbook, a reasonable at will employee could not interpret its distribution as an offer to modify his at will status. An employer's offer to modify the at will status of his employees must be stated with greater definiteness and clarity than is found here. Since McDonnell Douglas made no offer to its employees, no power of acceptance was created in the plaintiff.

*Id.* at 662–63 (citations omitted); *see also, e.g., Jennings v. SSM Health Care St. Louis,* 355 S.W.3d 526, 533–34 (Mo.App. E.D.2011); *Doran v. Chand,* 284 S.W.3d 659, 664–65 (Mo.App. W.D.2009) ("Employees point to nothing in ADT's handbook ... that would lead a reasonable at will employee to believe that ADT clearly and definitely offered to modify his or her at will status.").

■ Despite the general rule that employee handbooks do not create contractual rights, an arbitration agreement contained within an employee handbook may constitute an enforceable agreement where the employer and employee unambiguously agree that binding arbitration will constitute the employee's exclusive remedy for employment-related disputes. *See, e.g., McIntosh,* 48 S.W.3d at 87, 89 (enforceable arbitration agreement found where em-

ployee executed form acknowledging receipt of employee handbook, in which he "voluntarily agree[d] . . . to submit to final and binding arbitration" any employment-related disputes, and acknowledged that he was waiving his right to jury trial, and that arbitration would constitute his "sole and exclusive remedy" for such claims); *Patterson,* 113 F.3d at 835 (similar).

■ The Arbitration Agreement which Vatterott seeks to enforce contains provisions stating that it constitutes a binding and enforceable contract. Thus, the Agreement refers to itself as a "contract." In the Agreement Johnson agreed that a wide variety of employment-related disputes "shall be submitted to and determined exclusively by binding arbitration with the American Arbitration Association (AAA')." The Agreement later reiterates that "[t]he Award of the Arbitrator is *final and binding* upon the EMPLOYEE and COLLEGE," that "[a]rbitration is the *exclusive* means for the EMPLOYEE to enforce any legal rights he may have against the COLLEGE," and that by executing the Agreement Johnson waived her jury-trial rights. The Agreement specifies numerous details of the arbitration procedure (including applicable rules, selection of arbitrators, filing deadlines, venue, and recoverable damages and expenses), and provides that it "will survive the termination of the EMPLOYEE's relationship with COLLEGE." Immediately below the Agreement's signature blocks, it states in oversize type that *"THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES."*

On the other hand, the Arbitration Agreement plainly constituted *part of* the Employee Handbook, even though it was separately executed by Johnson and Vatterott's Director of Human Resources, and a copy of the Agreement was removed from the Handbook and placed in Johnson's personnel file. The Arbitration Agreement appears in the Handbook *after* the cover, table of contents, an employee acknowledgment form, and the Vatterott Code of Conduct. The Arbitration Agreement is listed in the Employee Handbook's Table of Contents, is continuously paginated with the remainder of the Handbook, and bears the same "Employee Handbook" header on each of its pages as the remainder of the Handbook.

Provisions of the Handbook outside of the Arbitration Agreement are inconsistent with the Agreement's statements that it constitutes a binding and enforceable contract. The first page of the Handbook following the Table of Contents is titled "Acknowledgment & Receipt of Employee Handbook." The Acknowledgment, which *precedes* the Arbitration Agreement, states in no uncertain terms that nothing in the Handbook is contractual or enforceable:

The Employee Handbook is an important document intended to help you become acquainted with Vatterott. This Handbook will serve as a guide but is not the final word in all cases. . . .

No employee handbook can anticipate every circumstance or question about policies. As Vatterott continues to grow and change, our policies may need to evolve along with it and Vatterott reserves the right to revise, supplement, or rescind any policies or portions of the Handbook as it deems appropriate at its sole discretion. . . .

. . . [E]mployees are asked to read and acknowledge the following:

● I have received a copy of the Employee Handbook. I understand that the policies, rules and benefits described in it are subject to change at any time and at the sole discretion of Vatterott.

● I understand the Employee Handbook is not a contract of employment and

that no employment relationship other than "at will" has been expressed or implied. I also understand that I am an "at will" employee and my employment may be terminated at any time, with or without prior notice, and with or without cause or reason by Vatterott.... [N]o circumstances arising out of my employment will alter my "at will" employment status unless expressed in writing and signed by me and the President of Vatterott. No officer, employee, or representative of the company is authorized to enter into an agreement, express or implied with any employee for employment other than at-will unless those agreements are in a written contract signed by the CEO and President of Vatterott Educational Centers, Inc.

Similar admonitions appear in Handbook provisions *following* the Arbitration Agreement.

**Purpose of this Handbook**

. . . .

Vatterott's policies, benefits and rules, as explained in this Handbook, may be changed from time to time as business, employment legislation, and economic conditions dictate.

. . . .

**NOTICE**

The policies in this Handbook are to be considered guidelines. Vatterott, at its option, may change, delete, suspend or discontinue any part of parts of the policies in the Handbook at any time without prior notice....

No one other than the President of Vatterott may alter or modify any of the policies in this Handbook. No statement or promise by a supervisor, manager, or department head may be interpreted as a change in policy nor will it constitute an agreement with an employee.

Therefore, while the Arbitration Agreement itself states that it is a binding and enforceable contract which will survive the termination of Johnson's employment, it is book-ended by sections of the Employee Handbook which state in equally clear and explicit terms that nothing in the Handbook is contractual, and that everything in the Handbook is subject to change by Vatterott at any time, in its sole discretion.

The other provisions of the Handbook also indicate that the Arbitration Agreement was not executed by a Vatterott representative with authority to bind the company. While the Arbitration Agreement is signed by Vatterott's Director of Human Resources, the Acknowledgement states that "no circumstances arising out of my employment will alter my at will' employment status," unless reduced to writing and executed by Vatterott's President, and that only the President can execute any "agreement ... for employment other than at-will." The Handbook provisions following the Arbitration Agreement are even broader, stating that "[n]o statement or promise by a supervisor, manager, or department head ... will ... constitute an agreement with an employee." Vatterott's briefing argues that the Director of Human Resources had authority to execute the Arbitration Agreement on Vatterott's behalf because execution of such agreements "is part of the usual, customary, and reasonably necessary' functions of the Human Resources position." We fail to see, however, how the customary functions of a corporate human resources director could override Vatterott's specific representation to Johnson and other employees that officers in such positions had no authority to execute binding agreements with employees.

■ We are left, then, with an Employee Handbook which is at best ambiguous

concerning the enforceability and modifiability of the Arbitration Agreement contained within it. In these circumstances, we cannot find that Vatterott offered Johnson a binding and enforceable arbitration agreement with the "definiteness and clarity" required to supersede the general rule that employee handbooks which are unilaterally modifiable by an employer do not give rise to contractual rights. *Johnson,* 745 S.W.2d at 663.[2] The ambiguities as to the contractual status of the Arbitration Agreement must be construed against Vatterott, the Agreement's drafter. *Frye,* 321 S.W.3d at 442 n. 20.[3]

Therefore, despite some ambiguities in the Handbook and Arbitration Agreement, we construe the Arbitration Agreement as being subject to the general provisions of the Handbook. Those provisions specify that the Handbook's contents were merely guidelines which were unilaterally modifiable at any time by Vatterott, and that no officer other than Vatterott's President could execute any binding agreement with employees. Under this reading, we cannot find that Johnson agreed with Vattterott to an arbitration agreement that can be enforced against her. This conclusion is dictated by *Whitworth v. McBride & Son Homes, Inc.,* 344 S.W.3d 730 (Mo. App. W.D.2011), in which this Court found that the arbitration procedures contained within an employee handbook were not contractual, or binding on an employee. The employee handbook at issue in *Whitworth* contained admonitions similar to those in Vatterott's Handbook, emphasizing that the handbook policies were merely guidelines, and could be modified by the employer at any time. Given these advisories, we held that the arbitration procedures could not be enforced against an employee. We explained:

Neither the Handbook nor the Statement [executed by the employee, acknowledging receipt of the Handbook,] excepted the arbitration provisions from the broad sweep of the "informational only/this is not a contract" provisions. Notwithstanding, the Defendants argue on appeal that the "informational only/this is not a contract" provisions in the Handbook apply only to "employment policies." This is a distinction without meaning. The dispute resolution proce-

---

2. The standard of "definiteness and clarity" announced in *Johnson* is consistent with the standards applied to contractual offers more generally. *See, e.g., State v. Nationwide Life Ins. Co.,* 340 S.W.3d 161, 189 (Mo.App. W.D. 2011); *Volker Court, LLC v. Santa Fe Apts., LLC,* 130 S.W.3d 607, 611 (Mo.App. W.D. 2004).

3. While a presumption in favor of arbitration may exist when interpreting *the scope of disputes falling within an arbitration clause,* no such presumption applies to the antecedent question whether an enforceable agreement to arbitrate even exists. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London,* 584 F.3d 513, 526–27 (3rd Cir.2009); *Dumais v. Am. Golf Corp.,* 299 F.3d 1216, 1220 (10th Cir.2002).

Decisions from other jurisdictions have addressed similar circumstances, where general provisions of an employee handbook stating that the handbook is non-contractual and unilaterally modifiable conflict with other handbook provisions stating that an arbitration agreement contained within the handbook is binding and enforceable. Consistent with our decision today, those cases hold that the ambiguity as to the enforceability of the arbitration agreement must be construed against the agreement's drafter, the employer. *See, e.g., Dumais v. Am. Golf Corp.,* 299 F.3d 1216, 1219–20 (10th Cir.2002); *Salazar v. Citadel Commc'ns Corp.,* 135 N.M. 447, 90 P.3d 466, 470 (2004); *Heye v. Am. Golf Corp.,* 134 N.M. 558, 80 P.3d 495, 499–500 (Ct.App.2003); *cf.* RESTATEMENT (2D) OF CONTRACTS § 21, comment b (1981) (where interpretive questions arise due to provision of agreement stating that the parties' "legal relations are not to be affected," "to avoid such questions [the provision] may be read against the party who prepared it").

dures are no less an "employment policy" than the Handbook's provisions addressing vacation or sick days. McBride & Son could have included language in the Handbook advising that except with respect to the dispute resolution procedures, the Handbook's policies and procedures were informational only and non-contractual. It did not do so. Instead, McBride & Son unambiguously expressed its intent that the Handbook is not a contract. As such, the Handbook was not an "offer" to contract to which Whitworth could respond by "acceptance."

*Id.* at 739; *see also* RESTATEMENT (2D) OF CONTRACTS § 21 (1981) ("a manifestation of intention that a promise shall not affect legal relations may prevent the formation of a contract").[4] *Whitworth* also relied on the fact that no company representative subscribed to the handbook or arbitration procedures, even though the handbook advised employees that only the company's president, or the president's authorized representative, had authority to execute "any contract of employment" with employees. 344 S.W.2d at 740.

## Conclusion

The Arbitration Agreement contained in Vatterott's Employee Handbook was not a separate and distinct agreement, but was instead subject to the general admonitions that the Handbook's contents were unilaterally modifiable by Vatterott, and constituted mere guidelines. As such, the Arbitration Agreement was not a contractual offer which became binding on Johnson upon her acceptance of it. The circuit court's order denying Vatterott's motion to stay proceedings and compel arbitration is affirmed.[5]

All concur.

4. *Whitworth* recognizes that an employer can explicitly exempt an arbitration agreement from an employee handbook's "informational only/this is not a contract" provisions. This explains the results in *McIntosh*, 48 S.W.3d at 89, and *Patterson*, 113 F.3d at 835. In both cases, the same document within an employee handbook which emphasized the handbook's non-contractual nature *also* stated that the handbook's arbitration procedures would result in final and binding resolution of employment-related disputes. By including these statements in a single document, the employers in *McIntosh* and *Patterson* clearly advised employees that the arbitration provisions were an exception to the general statement that the handbook's provisions were non-contractual.

Consistent with *Whitworth*, cases from other jurisdictions have held that general state-

ments in an employee handbook, specifying that its provisions are non-contractual and modifiable, apply to the arbitration provisions contained within the handbook, in the absence of an explicit *exception* to the general "non-contractual/modifiable" provisions. *See Carey v. 24 Hour Fitness, USA, Inc.,* 669 F.3d 202, 206 (5th Cir.2012); *Scudiero v. Radio One of Texas II, L.L.C.,* No. H–12–1088, 2012 WL 7161616, at *3–4 (S.D.Tex. Sept. 27, 2012); *Stein v. Burt–Kuni One, LLC,* 396 F.Supp.2d 1211 (D.Colo.2005); *Nazareth Hall Nursing Ctr. v. Melendez,* 372 S.W.3d 301, 307 (Tex.Ct.App.2012); *Thompson v. Bar–S Foods Co.,* 174 P.3d 567, 575, 577 (Okla.2007).

5. Given our disposition, we need not address Johnson's alternative arguments that the Arbitration Agreement was not supported by adequate consideration, or is unconscionable.