Amanda L. BELLEMERE, Respondent,

v.

**CABLE–DAHMER CHEVROLET INC., et al., Appellants.**

No. WD 76328.

Missouri Court of Appeals, Western District.

Dec. 31, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 2014.

Application for Transfer Denied March 25, 2014.

Joseph M. Backer, Independence, MO, for respondent.

Kevin D. Case and Patric S. Linden, Kansas City, MO, for appellants.

Before Division Three: LISA WHITE HARDWICK, Presiding Judge, CYNTHIA L. MARTIN, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Respondent Amanda Bellemere ("Bellemere") brought suit against Appellants Cable–Dahmer Chevrolet, Inc. ("Cable–Dahmer"), William Wilkerson ("Wilkerson"), Clayton Ward ("Ward"), and Eric Fisenic ("Fisenic") related to the purchase of a vehicle (collectively, "Appellants"). Appellants sought to compel arbitration based on an arbitration clause in the sales contract, but the Circuit Court of Jackson County overruled that motion. This appeal followed. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

On or about September 30, 2011, Bellemere went to Cable–Dahmer, an automobile dealership, to consider purchasing a car. She was helped by Wilkerson (a salesperson), Ward (the finance and insurance manager), and Fisenic (a used-car sales manager).

Wilkerson directed Bellemere to a 2006 Chevrolet Monte Carlo. Per the petition, Wilkerson, Ward, and Cable–Dahmer represented that this automobile was a "good, reliable car." They told Bellemere that it had been owned by an older couple who had been customers of Cable–Dahmer for fifteen years and who had traded the Monte Carlo for a Corvette.

The Monte Carlo had a Buyer's Guide in the window at the time Bellemere considered the car. Bellemere alleged that the guide indicated that the manufacturer's warranty "still applies," yet the warranty was not in effect at the time of the sale. Bellemere purchased the vehicle for approximately $17,000. She further alleged that paperwork relating to the sale "was incorrect on several occasions" and that it took three weeks after she took possession of the car for Cable–Dahmer to correctly write up the automobile purchase agreement.

On or about December 12, 2011, Bellemere took the vehicle to Carmax, another car dealer, to inquire about trading it for another vehicle. Carmax inspected the vehicle and determined: "major frame damage; apron repaired; core support damaged; frame poor or inadequate prior repair, and air bags had been deployed."

Bellemere alleged additional defects in the automobile:

—the key will not come out of the ignition when the car is parked;

—the transmission is slipping; the alternator has been damaged and covered up;

—a popping sound comes from the steering column;

—the Monte Carlo can shift from "park" to any gear without the necessity of pressing on the brake pedal;

—a sway arm is defective;

—the Monte Carlo is out of alignment front to back, as admitted by Cable–Dahmer's mechanics and service personnel;

—the electrical system or alternator are not working properly such that Bellemere has replaced the battery three times in the last year;

—the car often fails to start and has left Bellemere stranded on many occasions.

Bellemere alleges that Cable–Dahmer, Ward, and Wilkerson rushed her through the paperwork and did not give her a chance to read it fully by using "high[-]pressure sales tactics and misrepresentation."

Bellemere filed her lawsuit on January 11, 2013, alleging these and additional facts which are more fully set forth below as necessary to the discussion. Her petition contained four counts: fraud, negligence, negligent misrepresentation, and violations of the Merchandising Practice Act ("MPA") under section 407.020.[1]

Appellants each filed an answer to Bellemere's petition on February 28, 2013. Additionally, Appellants filed a "Joint Motion of All Defendants to Compel Arbitration" accompanied by a "Statement of Uncontroverted Material Facts in Support of Joint Motion of All Defendants to Compel

---

1. All statutory references are to RSMo 2000 as currently supplemented unless otherwise indicated.

Arbitration." Bellemere responded by arguing that the arbitration clause was unconscionable.

In their Statement of Uncontroverted Material facts, Appellants included the following:

> [a]s part of the transaction in which [Bellemere] purchased the Vehicle, [Bellemere] signed two purchase agreements, a preliminary agreement (which does not reflect the final trade value and loan payoff amounts for [Bellemere's] trade-in vehicle, which had not yet been finalized) and an amended agreement signed on a subsequent date that incorporated the terms negotiated for the value of [Bellemere's] trade-in vehicle and the amount reported by the lender to pay off the loan on that trade-in vehicle.

Each of the two purchase agreements contains an identical arbitration provision. An affidavit from Cable–Dahmer's office manager describes the two documents as such: "Exhibit B[ ] is a true and correct copy of the first purchase agreement signed by Amanda Bellemere for the purchase of the 2006 Chevrolet Monte Carlo." And: "Exhibit C[ ] is a true and correct copy of the second (amended) purchase agreement signed by Amanda Bellemere for the purchase of the 2006 Chevrolet Monte Carlo, which reflects the finalized loan payoff amount and negotiated trade-in value for the vehicle Bellemere's [sic] traded to the dealership as part of the payment for her purchase of the 2006 Monte Carlo."

Both purchase agreements are dated September 30, 2011. Exhibit B, the first purchase agreement, is signed by Bellemere and a representative of Cable–Dahmer. The form for the purchase agreement states by the signature line for the dealer: "MANAGER'S APPROVAL (Must be Accepted by An Authorized Representative of the Dealer)." Additionally, both purchase agreements state "If Buyer is buying the Vehicle for cash (this includes Buyer arranging Buyer's own financing from a party other than dealer), this Agreement is not binding upon either Dealer or Buyer until signed by an authorized Dealer representative."

Even though both parties signed the first purchase agreement, that agreement did not include the valuation of and loan payoff amount for Bellemere's trade-in vehicle. Exhibit C, the second purchase agreement, contained the amount of the loan on Bellemere's trade-in vehicle. However, although Bellemere signed that purchase agreement, the dealer's signature line on the second purchase agreement is blank—despite the form's requirement that it "Must be Accepted by An Authorized Representative of the Dealer."

On April 5, 2013, the trial court denied Appellants' "Joint Motion to Compel Arbitration," concluding that "Exhibit C does not represent a fully executed and binding agreement between the parties, *at least as to the issue of arbitration* which is currently before the Court" (emphasis added). The trial court found that the second, more recent purchase agreement was not signed by anyone from Cable–Dahmer and included in its order that Appellants "admit that Exhibit B did not contain the final negotiated value for the trade-in, and, therefore, the final balance due to defendant Cable–Dahmer Chevrolet, Inc., Exhibit B cannot represent the final agreement of the parties." The trial court further concluded that the second agreement was "one-sided" in that Bellemere would be unable to enforce arbitration against any Appellant.

This timely appeal follows.[2]

## STANDARD OF REVIEW

In examining a motion to compel arbitration, we consider three factors. *Frye v. Speedway Chevrolet Cadillac,* 321 S.W.3d 429, 434–435 (Mo.App.W.D.2010). We first determine "whether a valid arbitration agreement exists." *Id.* (quoting *Nitro Distrib., Inc. v. Dunn,* 194 S.W.3d 339, 345 (Mo. banc 2006)). If a valid arbitration agreement exists, we next determine "whether the specific dispute falls within the scope of the arbitration agreement." *Id.* (citation omitted). If the first two elements are met, we determine "whether the arbitration agreement is subject to revocation under applicable contract principles." *Id.* (citation omitted).

Whether the motion to compel arbitration should have been granted is a legal question subject to our de novo review. *Katz v. Anheuser-Busch, Inc.,* 347 S.W.3d 533, 539 (Mo.App.E.D.2011) (citations omitted). "However, issues relating to the existence of an arbitration agreement are factual and require our deference to the trial court's findings." *Id. See also Whitworth v. McBride & Son Homes, Inc.,* 344 S.W.3d 730, 736 (Mo.App.W.D.2011) ("[i]f the trial court's ruling on a motion to compel arbitration include factual findings which bear on these three factors, then the factual findings will be affirmed if they are supported by substantial evidence, and are not against the weight of the evidence").

## ANALYSIS

Appellants assert four points relating to the trial court's denial of their motion to compel arbitration. First, they argue that the trial court erred in denying their motion on the basis of a "lack of mutuality of obligation" because that issue was reserved for the arbitrator. Second, they argue that the trial court erred in denying their motion because the absence of Cable–Dahmer's signature on the second purchase agreement did not render that agreement unenforceable because any problems were "cured" by Cable–Dahmer seeking specific enforcement of the second purchase agreement. Third, they argue that the trial court erred in denying their motion because even if the second purchase agreement was "inchoate" and unenforceable, Bellemere would still be obligated to arbitrate her claims under the first purchase agreement. Fourth, they argue that the trial court erred in denying their motion because that denial cannot be sustained on Bellemere's contention that the arbitration provision was unconscionable.

### Point One

Appellants argue in their first point on appeal that the trial court erred in denying their motion to compel on the ground that there was a lack of mutuality of obligation because that issue was reserved for the arbitrator in that the issue of mutuality of obligation concerned the enforceability of the second purchase agreement as a whole and was not specific to the enforceability of the arbitration clause. Put another way, Appellants argue that where an arbitration provision is part of a broader contract, a party seeking to avoid enforcement of the arbitration provision could attack the enforceability of the provision itself or attack the enforceability of the contract as a whole. In this case, Appellants argue, the enforceability of the contract as a

---

**2.** Orders denying enforcement of an arbitration provision in a contract are appealable despite the fact that such orders are not final judgments. *Lawrence v. Beverly Manor,* 273 S.W.3d 525, 527 n. 2 (Mo. banc 2009) (citing 9 U.S.C. section 16(a)(1)(B) and section 435.440.1).

whole is in question and should lie within the province of an arbitrator.

■ Appellants' point relied on misapprehends the issue before us. The trial court did not find a validly formed contract to be unenforceable. Rather, the trial court found that no written contract was ever formed between Bellemere and Cable–Dahmer. "As the party asserting the existence of a valid and enforceable contract to arbitrate, [Appellants] 'bore the burden of proving that proposition.'" *Whitworth,* 344 S.W.3d at 737 (citation omitted).

■ The arbitration clause in the case at bar states that it is to be governed by the Federal Arbitration Act ("FAA"), which provides in part that written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[3] "The FAA expresses the United States Congress's policy favoring resolution of disputes by enforcement of arbitration agreements, instead of resorting to the judicial system." *Kansas City Urology, P.A. v. United Healthcare Services,* 261 S.W.3d 7, 11 (Mo.App.W.D.2008) (citation omitted). But "this policy is not enough, standing alone, to extend an arbitration agreement beyond its intended scope because arbitration is a matter of contract." *Id.* Further, "a party cannot be compelled to arbitration unless the party has agreed to do so." *Id.* As such, enforceability under the FAA never comes into play if a contract itself was never formed. To that end, the essential elements of a contract are: "(1) competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation." *Building Erection Servs. Co.*

*v. Plastic Sales & Mfg. Co., Inc.,* 163 S.W.3d 472, 477 (Mo.App.W.D.2005) (citation omitted). *See also Johnson v. Vatterott Educ. Ctrs., Inc.,* 410 S.W.3d 735, 738 (Mo.App.W.D.2013) ("Under ... the Federal Arbitration Act, ... whether the parties entered into an enforceable arbitration agreement is a preliminary issue for the court to decide, applying Missouri law."). The trial court expressly found that the second purchase agreement lacked mutuality because it had not been signed by Cable–Dahmer. The trial court thus found that an essential element of contract formation had not been established by Cable–Dahmer. As such, we never reach the issue of the contract's enforceability, either as a whole, or with respect solely to the arbitration provision.

■ Appellants *do not* contest the trial court's substantive determination that because Appellants never signed the second purchase agreement they now seek to enforce against Bellemere, the contract lacked mutuality and thus was never validly formed. "The argument shall be limited to those errors included in the 'Points Relied On.'" Rule 84.04(e). Arguments not included in the Points Relied On are not preserved for appeal. *Dep't of Soc. Servs. v. Peace of Mind Adult Day Care Ctr.,* 377 S.W.3d 631, 642 n. 14 (Mo.App.W.D.2012) (citation omitted). We note, *ex gratia,* however, that the record unequivocally supports the trial court's conclusion. The second purchase agreement expressly provides a signature line for the "Manager's Approval." Beneath this reference, the second purchase agreement states: "(Must Be Accepted By An Authorized Representative of the Dealer)." The very document Appellants sought to enforce negates the viability of a claim that a written contract was formed. In addition, the same docu-

---

**3.** Specifically, the arbitration clause states that it "shall be governed by the Federal

Arbitration Act and (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration."

ment states "If Buyer is buying the Vehicle for cash (this includes a Buyer arranging Buyer's own financing from a party other than dealer), *this Agreement is not binding upon either Dealer or Buyer until signed by an authorized Dealer representative.*" (Emphasis added.) That language similarly supports the trial court's conclusion that until an authorized representative of the Dealer signed the second purchase agreement, no written contract was formed. *Johnson*, 410 S.W.3d at 741–42 (holding that where employee handbook specified that "no officer other than [employer]'s President could execute any binding agreement with employees," lack of President's signature on purported arbitration agreement prevented it from being enforceable); *Whitworth*, 344 at 739 (holding that provisions of employee handbook stating that handbook's terms were "informational only/this is not a contract" defeated employer's argument' that arbitration agreement was enforceable). *See also Morrow v. Hallmark Cards*, 273 S.W.3d 15, 25 (Mo.App.W.D.2008) (holding that employer was not only *not* bound to submit its claims to arbitration but employer was also *not* bound to keep any so-called 'promise' expressed in its dispute resolution provision); *Frye*, 321 S.W.3d at 442 (noting in the context of arbitration that a provision can lack mutuality and thus be unenforceable); *Clemmons v. Kansas City Chiefs Football Club, Inc.*, 397 S.W.3d 503, 506 (Mo.App.W.D.2013) (holding no mutuality where only employee agreed all matters in dispute would be referred for arbitration).

■■■■■ Appellants cite no authority for the proposition that the question of whether a contract was formed in the first instance (as distinguished from whether a formed contract is subject to a defense to its enforceability) is a matter within the exclusive purview of an arbitrator. We have held that "Missouri contract law applies to determine whether the parties have entered a valid agreement to arbitrate." *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 856 (Mo. banc 2006). State "substantive law governs the issues of the existence . . . of any purported arbitration contract." *Morrow*, 273 S.W.3d at 21. And in our consideration of whether there is a valid agreement to arbitrate, "the usual rules of state contract law and canons of contract interpretation apply." *Id.* When the issue presented is whether a contract was formed at all, it is counterintuitive to suggest that said issue has been relegated by contractual agreement for determination by an arbitrator.

We thus find inapplicable Appellants' reliance on two cases from the United States Supreme Court, both of which hold that a challenge to the *enforceability* of the contract as a whole, not specifically the arbitration clause, must go to an arbitrator: *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) and *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). *Prima Paint* requires federal courts to submit to arbitration claims of fraud in the inducement to enter into the contract. 388 U.S. at 406, 87 S.Ct. 1801. *Buckeye Check* holds that whether a usurious finance charge renders void an entire contract, including the arbitration clause, is a matter for an arbitrator, not a court. 546 U.S. at 449, 126 S.Ct. 1204. Both cases presuppose that a validly formed contract may be subject to a defense to its enforceability—an issue not presented by the trial court's finding that the absence of Cable–Dahmer's signature on the second purchase agreement negated an essential element of contract formation.

In its order, the trial court was careful to note that "Exhibit C does not represent

a fully executed and binding agreement between the parties, at least as to the issue of arbitration which is currently before the Court." The trial court correctly determined this issue. *See Advance America Servicing of Arkansas, Inc. v. McGinnis*, 375 Ark. 24, 289 S.W.3d 37, 45 (2008) (determining that the *Buckeye* rule was not violated where, as here, the trial court ruled that arbitration clause lacked mutuality of obligation); *Vallejo v. Garda CL Southwest, Inc.*, 948 F.Supp.2d 720, 726–27 (S.D.Tex.2013) (holding that "challenges to contract formation—including whether the plaintiff signed the contract or, if not, can nonetheless be bound under principles of contract or agency law, or whether the signor lacked authority to commit the alleged principal—are different from the challenges to contract validity" and "state-law contract principles govern questions of contract formation"); *Koch v. Compucredit Corp.*, 543 F.3d 460, 465 (8th Cir.2008) (holding that it "accomplishes nothing" to treat the arbitration clause separately if one litigant was not a party to it). *See also Whitworth*, 344 S.W.3d at 743, n. 13 (stating that "[i]t is difficult to conceive how [Appellants] can claim they promised to be bound by the dispute resolution procedures ... when [a manager] never signed the ... Arbitration Agreement").

Because Appellants do not challenge the trial court's conclusion that no contract was formed, and because Appellants neither argue nor establish that the issue of contract formation (as distinguished from enforceability) must be submitted to an arbitrator for determination, this point is denied.

## Point Two

██ In their second point, Appellants argue that the trial court erred in denying their motion to compel arbitration on the basis that there was a lack of mutuality of obligation because the absence of Cable–Dahmer's signature did not render that agreement unenforceable "in that any question regarding mutuality of obligation or whether Appellants were bound by the purchase agreement were cured by Cable–Dahmer's actions in seeking specific enforcement of the second purchase agreement and its included arbitration provision."

██ Appellants rely on *Ray v. Wooster*, 270 S.W.2d 743, 752 (Mo.1954) to argue that even though Cable–Dahmer failed to sign the second purchase agreement, the lack of mutuality thereby occasioned was "cured" when they sought to enforce the agreement. We are not persuaded. Here, unlike the contract at issue in *Ray*, the Appellants' purchase agreement form expressly conditioned formation of a binding contract on the presence of a signature by an authorized dealer representative. "[W]hether an unsigned writing constitutes a binding contract usually depends on the intention of the parties" which is often a *fact-dependent question. Robinson v. Powers*, 777 S.W.2d 675, 679 (Mo.App.S.D. 1989).

As Appellants emphasize in their brief, the trial court was presented with uncontested facts on this subject. The trial court expressly examined Exhibit B, the first purchasing agreement, and Exhibit C, the second purchasing agreement. Appellants concede that the first purchase agreement was never final because it lacked material terms relating to "valuation and loan payoff amount for Bellemere's trade-in vehicle." The trial court considered Cable–Dahmer's **admission** that the first purchase agreement did not contain the final negotiated value of the trade-in and accordingly concluded that it was not the final agreement of the parties. The trial court noted that "Exhibit C is not signed by a Cable–Dahmer authorized

Representative *as mandated by the document itself*" (emphasis added). The purchase agreement form, as we have noted, expressly conditioned contract formation on the form being signed by an authorized dealer representative. The purchase agreement form thus evidenced Cable–Dahmer's clear and unequivocal intent that in the absence of authorized execution, no binding contract existed. Under these circumstances, Appellants' reliance on *Ray* is inapposite. Appellants will not be permitted to disregard an express condition to contract formation by conveniently contending that their subsequent unilateral attempt to enforce the agreement operated to supply an essential element to its formation.

This point is denied.

### Point Three

In their third point, Appellants argue that the trial court erred in denying their motion to compel arbitration because even if the second purchase agreement was inchoate and unenforceable due to incomplete execution, Bellemere would still have been obligated to arbitrate her claims under the first purchase agreement in that the first purchase agreement would have been the parties' final agreement had it not been superseded by the second purchase agreement.

■■■ This Point Relied On is facially belied by Appellants' concession that the first purchase agreement was not a "final" agreement as it lacked material terms relating to the valuation and payoff amount for Bellemere's trade-in vehicle. Accordingly, Appellants have not challenged the trial court's commensurate factual conclusion that the first purchase agreement was not a final agreement. It follows as a matter of law and common sense that the first purchase agreement is not transformed into something it never was-a final agreement subject to enforcement—merely because the second purchase agreement failed to satisfy all of the essential elements of a contract.

In short, Appellants provide no meaningful authority in support of their arguments as required by Rule 84.04. We "will not infer, or indeed create, the legal argument" for Appellants. *Coyne v. Edwards*, 395 S.W.3d 509, 520 (Mo. banc 2013).

This point is denied.

### Point Four

In their fourth point on appeal, Appellants argue that the arbitration clause is not unconscionable. Because the trial court did not err in finding the arbitration provision unenforceable on another ground, we need not address this point.

### CONCLUSION

The order denying Appellants' motion to compel is affirmed.

All concur.