

*In the*

*Missouri Court of Appeals*

*Western District*

| | | |
|---|---|---|
| JENN BAIER, | ) | |
| | ) | |
| Respondent, | ) | WD76584 |
| | ) | |
| v. | ) | OPINION FILED: February 25, 2014 |
| | ) | |
| DARDEN RESTAURANTS, ET AL., | ) | |
| | ) | |
| Appellants. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Michael W. Manners, Judge

Before Special Division: Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and
Zel M. Fischer, Special Judge

Darden Restaurants d/b/a Olive Garden ("Darden"), GMRI, Inc. d/b/a Olive Garden ("GMRI"), Olive Garden, Chris Paith ("Paith"), and Adam Schwantes ("Schwantes") (collectively "Defendants") appeal from the trial court's denial of their motion to dismiss or, in the alternative, to stay proceedings and compel arbitration.[1] The Defendants contend that the trial court erred in denying the motion because (1) there was a valid arbitration contract to which the claims were subject; and (2) the arbitration

---

[1]Section 435.440.1(1) provides "[a]n appeal may be taken from [a]n order denying an application to compel arbitration." All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

contract was enforceable because it was not procedurally or substantively unconscionable. We affirm.

## Factual and Procedural History

Between January 2011 and July 2012, Jennifer Baier ("Baier") was employed by Darden as a waitress at Olive Garden restaurants. Baier began her employment at the Olive Garden restaurant in Columbia. On January 31, 2011, Baier signed several documents, including an acknowledgment ("First Acknowledgement") of receipt of a booklet describing Darden's Dispute Resolution Process ("DRP"). Immediately above Baier's signature, the First Acknowledgment states:

> I have received and reviewed the Dispute Resolution Process (DRP) booklet. This booklet contains the requirements, obligations, procedures and benefits of the DRP. I have read this information and understand and agree to the terms and conditions of the DRP. I agree as a condition of my employment, to submit any eligible disputes I may have to the company's DRP and to abide by the provisions outlined in the DRP. I understand that this includes, for example, claims under state and federal laws relating to harassment or discrimination, as well as other employment-related claims as defined by the DRP. Finally, I understand that the company is equally bound to all of the provisions of the DRP.

The DRP booklet provides:

> **The DRP is the sole means for resolving covered employment-related disputes, instead of court actions. Disputes eligible for DRP must be resolved only through DRP, with the final step being binding arbitration heard by an arbitrator. This means DRP-eligible disputes will NOT BE RESOLVED BY A JUDGE OR JURY. Neither the Company nor the Employee may bring DRP-eligible disputes to court. The Company and the Employee waive all rights to bring a civil court action for these disputes.**

(Emphasis in original.) The First Acknowledgment includes a line for "Management Signature." No one signed the First Acknowledgment on Darden's behalf.

2

On March 31, 2011, Baier signed a second acknowledgment ("Second Acknowledgment") when she was transferred to an Olive Garden restaurant in Blue Springs. The Second Acknowledgment is identical to the First Acknowledgement. Once again, the line designated for "Management Signature" was not signed by Darden.

On July 9, 2012, Baier signed a third acknowledgement ("Third Acknowledgement") when she was transferred to an Olive Garden restaurant in Lee's Summit. The Third Acknowledgment includes a notation on the bottom of the page that reads "January 2005 (reformatted April 2011)." The line for "Management Signature" had been removed, and the Third Acknowledgment was not signed by Darden.

Baier left employment with Darden in July 2012. On July 30, 2012, Baier filed a charge of discrimination on the basis of sex and retaliation with the Missouri Commission on Human Rights ("Commission"). The Commission issued a right-to-sue letter to Baier on March 13, 2013. Baier filed suit against the Defendants on March 19, 2013. The suit alleged two causes of action: (1) sexual harassment and gender discrimination in violation of the Missouri Human Rights Act; and (2) retaliation in violation of the Missouri Human Rights Act.

The Defendants filed a motion to dismiss or, in the alternative, to stay proceedings and compel arbitration, and motion to stay discovery ("Motion"). The Motion alleged that Baier entered into a contract with Darden on January 31, 2011, (the date of the First Acknowledgement), that requires her to arbitrate her claims against all of the Defendants. A document represented to be the First Acknowledgement and the DRP booklet therein referenced was attached to the Motion.

3

Baier opposed the Motion, arguing that a valid arbitration agreement had not been formed between Baier and Darden in part because the First Acknowledgement was not signed by Darden. Baier also pointed out that the DRP booklet attached to the Motion bears a notation on the bottom of each page that reads "January 2005 (reformatted April 2011)," while the First Acknowledgment attached to the Motion was signed by Baier on January 31, 2011. In the alternative, Baier argued that if a valid arbitration agreement was formed, if could not be enforced because it was procedurally and substantively unconscionable.[2]

The Defendants filed a reply and acknowledged that the DRP booklet attached to the Motion was a version Darden reformatted in April 2011. However, the Defendants argued that the version of the DRP booklet attached to the Motion was immaterial, as the booklet had not substantively changed anytime during Baier's employment. The Defendants attached the January 2005 version of the DRP booklet and Baier's Second and Third Acknowledgements to their reply. The Defendants argued that even though Baier signed new acknowledgments when she changed store locations, Darden and Baier had operated under the same DRP agreement since January 31, 2011.

The trial court entered an order on June 17, 2013, denying the Motion. The order did not specify any factual findings or legal conclusions. The Defendants appeal.

---

[2]Baier also argued that if a valid arbitration agreement was formed, it could not be enforced by the Defendants other than Darden, as they were not parties to the agreement. Because we conclude that no valid arbitration agreement was formed between Baier and Darden, we need not resolve whether the claims asserted by Baier against the Defendants other than Darden were within the scope of the DRP.

4

**Standard of Review**

A trial court's decision to deny a motion to stay proceedings and to compel arbitration is a legal conclusion that we review *de novo*. *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 435 (Mo. App. W.D. 2010). "However, issues relating to the existence of an arbitration agreement are factual and require our deference to the trial court's findings." *Katz v. Anheuser-Busch, Inc.*, 347 S.W.3d 533, 539 (Mo. App. E.D. 2011); *see also State Farm Mut. Auto Ins. Co. v. Allen*, 744 S.W.2d 782, 786 (Mo. banc 1988) ("[We] give the findings of fact of the trial court the approximate effect of a jury verdict . . . ."); *Whitworth v. McBride & Son Homes, Inc.*, 344 S.W.3d 730, 736 (Mo. App. W.D. 2011) ("If the trial court's ruling on a motion to compel arbitration includes factual findings . . . then the factual findings will be affirmed if they are supported by substantial evidence, and are not against the weight of the evidence.").

Here, the trial court did not make factual findings. Rule 73.01(c) directs that "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." *See Pearson v. Koster*, 367 S.W.3d 36, 52 (Mo. banc 2012) (holding that where no factual findings are made, we view "the facts in the light most favorable to the trial court's judgment").

**Analysis**

The Defendants assert two points relied on, each of which claims that the trial court erred in denying the Motion. First, the Defendants argue that a valid arbitration agreement was formed between Darden and Baier. Second, the Defendants argue that the arbitration agreement should be enforced because it is not procedurally or substantively

5

unconscionable. Because the order denying the Motion does not specify the legal basis for the trial court's ruling, we do not know whether the trial court concluded that no valid arbitration agreement existed between Darden and Baier or whether it concluded that an arbitration agreement existed but was unenforceable. We are required, however, to affirm the trial court's order on any theory supported by the record. *In re Estate of Blodgett*, 95 S.W.3d 79, 81 (Mo. banc 2003); *see also* Rule 73.01(c) ("The court shall render the judgment it thinks proper under the law and the evidence.").

### *Point One*

A motion to compel arbitration first requires the trial court to determine whether a valid arbitration agreement exists. *Frye*, 321 S.W.3d at 434 (citing *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006)).[3] Without a valid agreement to arbitrate, the trial court cannot compel a party to arbitrate a dispute. *Id.* at 436. We apply principles of Missouri law to determine whether a valid arbitration agreement has been formed. *Id.*

"The elements required to form a valid contract in Missouri are 'offer, acceptance, and bargained for consideration.'" *Id.* (quoting *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988)). "As the party asserting the existence of a valid and enforceable contract to arbitrate, the Defendants '[bear] the burden of proving that proposition.'" *Whitworth*, 344 S.W.3d at 737 (quoting *U.S. Bank v. Lewis*, 326 S.W.3d 491, 495 (Mo. App. S.D. 2010)). "'If the trier of fact does not believe the evidence of the

---

[3]If a valid arbitration agreement exists, the second factor to consider is whether the dispute falls within the scope of the agreement. *Frye*, 321 S.W.3d at 434 (citing *Nitro Distrib., Inc*, 194 S.W.3d at 345). If so, the third factor to consider is "whether the arbitration agreement is subject to revocation under applicable contract principles." *Id.* at 434-35.

6

party bearing the burden, it properly can find for the other party.'" *Sneil, LLC v. Tybe Learning Ctr., Inc.*, 370 S.W.3d 562, 567 (Mo. banc 2012) (quoting *White v. Dir. of Revenue*, 321 S.W.3d 298, 305 (Mo. banc 2010)). "'[T]he trier of fact has the right to disbelieve evidence, even when it is not contradicted.'" *Id.* (quoting *White*, 321 S.W.3d at 307).

Applying these principles here, the Defendants bore the burden of proving that a valid arbitration agreement was formed between Darden and Baier on January 31, 2011, as asserted in the Motion.[4] The Defendants thus bore the burden of establishing offer, acceptance, and bargained for consideration as of that date.

Offer and acceptance requires a mutual agreement. *Frye*, 321 S.W.3d at 436. "A mutual agreement is reached when 'the minds of the contracting parties meet upon and assent to the same thing in the same sense at the same time.'" *Kunzie v. Jack-In-The-Box, Inc.*, 330 S.W.3d 476, 483 (Mo. App. E.D. 2010) (quoting *Viacom Outdoor, Inc. v. Taouil*, 254 S.W.3d 234, 238 (Mo. App. E.D. 2008)). "'A meeting of the minds occurs when there is a definite offer and unequivocal acceptance.'" *Id.* at 484 (emphasis omitted) (quoting *Guidry v. Charter Commc'n*, 269 S.W.3d 520, 528 (Mo. App. E.D. 2008)).

Darden required Baier to sign the First Acknowledgement when she began her employment. Loosely, the First Acknowledgement and the referenced DRP booklet

---

[4]Consistent with the Motion, the Defendants urge in their Briefs that Baier "accepted the offer [of an arbitration agreement] on January 31, 2011 (and again on March 31, 2011, and July 9, 2012)." [Appellants' Brief, p. 17]. The Motion and the Defendants' Briefs implicitly characterize the Second Acknowledgment and the Third Acknowledgment as Baier's reaffirmations of an agreement she entered into on January 31, 2011, when the First Acknowledgment was signed.

7

constituted a proposal to enter into a bilateral contract, that is a contract "in which there are mutual promises between two parties to the contract; each party being both a promisor and a promisee." *Aden v. Dalton*, 107 S.W.2d 1070, 1073 (Mo. 1937). The Defendants admit as much, characterizing the DRP as a bilateral contract because "[b]oth parties have promised to forego litigation and to arbitrate employment-related disputes between them in exchange for the other party's promise to do the same." [Appellants' Brief, p. 20].

It is axiomatic that a proposal to enter into a bilateral agreement must be accepted by **both** parties for a contract to be formed. *Stephenson v. Village of Claycomo*, 246 S.W.3d 22, 27 (Mo. App. W.D. 2007). Whether there is mutual assent sufficient to form a contract depends upon the intentions of the parties. *Collins v. Swope*, 605 S.W.2d 538, 540 (Mo. App. S.D. 1980).

> 'Intention' is a state of mind. Seldom are the intentions of parties capable of direct proof and, ordinarily, such intentions are determinable only through logical deduction from proven facts. The trier of the facts, be it court or jury, usually decides the question of intention. Albeit a party may testify regarding his intentions, if his testimony is contrary to other evidence it is of small value.

*Id.*

Baier signed the First Acknowledgment. A party's signature on a contract remains the "common, though not exclusive, method of demonstrating agreement." *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 22-23 (Mo. App. W.D. 2008). Darden, however, did not sign the First Acknowledgment. While a signature is not the only way to establish acceptance of the proposed terms of a bilateral contract, in the absence of a

signature, the party claiming that a contract was formed must present other evidence to establish its assent to abide by the terms of the agreement. *See Heritage Roofing, LLC v. Fischer*, 164 S.W.3d 128, 134 (Mo. App. E.D. 2005) ("A signature is not required in order to show mutuality or assent to the terms of a writing. Assent can be shown in other ways, such as by the parties' conduct." (citations omitted)). Whether a party has accepted the terms of a contract in the absence of a signature is thus a question of fact. *Bellemere v. Cable-Dahmer Chevrolet, Inc.*, No. WD76328, 2013 WL6858181, at *6 (Mo. App. W.D. Dec. 31, 2013) ("'[W]hether an unsigned writing constitutes a binding contract usually depends on the intention of the parties' which is often a *fact-dependent question*." (quoting *Robinson v. Powers*, 777 S.W.2d 675, 679 (Mo. App. S.D. 1989))).

The Defendants claim that the First Acknowledgement was a written offer by Darden and that mutual assent was established as a matter of law once Baier accepted the acknowledgement with her signature. We disagree. The conclusion that a bilateral contract has been formed is *not* self-evident when an offeree signs an ***unsigned*** proposal. Rather, the absence of the offeror's signature on the proposal presents a question of fact, requiring the trial court to determine the offeror's intent, *i.e.*, whether an "offer" to enter into a bilateral contract was made, and thus whether the offeror intends to be bound if the unsigned proposal is accepted by the offeree. *Bellemere*, No. WD76328, 2013 WL6858181, at *6.

The evidence of Darden's intent was limited to the Defendant's self-serving claim that Darden meant for the First Acknowledgement to be an offer that would mutually bind both Baier and Darden if accepted in writing by Baier. The trial court was free to

9

disregard this self-serving claim. *See Sneil, LLC*, 370 S.W.3d at 567 ("'[T]he trier of fact has the right to disbelieve evidence, even when it is not contradicted.'" (quoting *White*, 321 S.W.3d at 307)).

Moreover, contrary evidence of Darden's intent existed in the record. *See Collins*, 605 S.W.2d at 540 ("Albeit a party may testify regarding his intentions, if his testimony is contrary to other evidence it is of small value."). The First Acknowledgment contains a "Management Signature" line that Darden did not sign. The Defendants offered no explanation for the absence of Darden's signature on the First Acknowledgement. The trial court could reasonably have believed that inclusion of a line for "Management Signature" on the First Acknowledgement reflected Darden's intent that its signature be affixed as a condition of mutual assent.[5] In fact, we are hard pressed to discern any purpose for placing a signature line for Darden on the First Acknowledgement unless it was to require an authorized signature as a condition of mutual assent.

We presume that the trial court weighed the evidence and the credibility of witnesses and found that Darden and Baier did not mutually assent to the terms of the bilateral DRP agreement, a factual finding that is supported by the record. *Pearson*, 367

---

[5]Darden also failed to sign the Second Acknowledgment which similarly contained a line for "Management Signature." The Third Acknowledgement did not contain a line for "Management Signature" and was not otherwise signed by Darden. Neither fact is relevant here as the Motion sought to enforce an arbitration agreement entered into on January 31, 2011, (the date of the First Acknowledgement), and as the Defendants in the Motion and in their Briefs effectively characterized the Second Acknowledgment and the Third Acknowledgement as reaffirmations of Baier's preexisting agreement.

During oral argument, the Defendants argued for the first time that each acknowledgement signed by Baier created a new arbitration agreement and that it was actually seeking to enforce the arbitration agreement entered into on July 9, 2012, the date of the Third Acknowledgement. Whatever the motivation for this shift, plainly, the relief sought during oral argument is inconsistent with the relief sought by the Defendants in the Motion and in their Briefs and is rejected out of hand. *State Farm Mut. Auto. Ins. Co. v. Esswien*, 43 S.W.3d 833, 840 (Mo. App. E.D. 2000) (holding that where appellant argued in its appellate brief for reformation of a policy on two theories that were not presented to the trial court, the new theories "are stricken because they were not preserved for consideration by this court").

S.W.3d at 51-52 (holding that in the absence of findings of fact, we presume that all factual findings were made in accordance with the result reached). As such, the trial court's denial of the Motion is not legally erroneous as it could have concluded that no valid arbitration agreement was ever formed between Baier and Darden.

During oral argument, Defendants urged that *Ray v. Wooster*, 270 S.W.2d 743 (Mo. 1954), requires us to conclude as a matter of law that notwithstanding the absence of Darden's signature on the First Acknowledgement, Darden's assent to be bound by the DRP was supplied when the Motion seeking to enforce the DRP was filed. This legal argument was not raised by the Defendants in the trial court or in the Defendants' Briefs, calling into question whether it has been preserved for our review. Even were we bound to consider the argument in light of our obligation to conduct *de novo* review of the trial court's denial of the Motion, we would find the argument unpersuasive. *Cf. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 387-88 (Mo. banc 1993) ("Because our review is *de novo*, the trial court's order may be affirmed in this Court on an entirely different basis than that posited at trial.").

The Defendants claim that *Wooster* broadly holds that acceptance of the terms of a bilateral contract by a non-signing party can be supplied when that party later files suit to enforce the contract. We disagree. *Wooster* narrowly holds that ***mutuality of remedy*** may be supplied when a non-signing party later files suit to enforce a contract. *Ray*, 270 S.W.2d at 725 ("The filing of a suit on a contract by the party not signing against the other party who did sign supplies the requirement of mutuality of remedy."). Mutuality

11

of remedy[6] refers to an obsolete doctrine in equity[7] which required both parties to a contract to have the right to seek specific performance for either to have the right and typically arose in cases were a non-signing party sought specific performance of a real estate contract. *See, e.g.*, *Kludt v. Connett*, 168 S.W.2d 1068, 1072-74 (Mo. 1943); *Jones v. Jones*, 63 S.W.2d 146, 152-53 (Mo. 1933); *McCall v. Atchley*, 164 S.W. 593, 596-97 (Mo. 1914). By its inherent nature, mutuality of remedy implicated the means by which a contract could be *enforced*, and not whether a contract had been *formed*. *See, e.g.*, *Lusco v. Tavitian*, 296 S.W.2d 14, 16-17 (Mo. 1956) (holding that contract that was orally accepted may lack mutuality of remedy at the time of its inception, but mutuality of remedy can be later supplied by non-signing party's initiation of suit to specifically perform option contract). There is simply no authority for the proposition that mutual assent (*i.e.*, offer and acceptance) to the terms of a bilateral contract can be supplied long after a contract was supposedly formed by a later suit to enforce the contract. Instead, offer and acceptance requires that "'the minds of the contracting parties meet upon and assent *to the same thing in the same sense at the same time*.'" *Kunzie*, 330 S.W.3d at 483 (emphasis added) (quoting *Viacom Outdoor, Inc.*, 254 S.W.3d at 238).

---

[6]Mutuality of remedy is to be distinguished from mutuality of obligation, as the latter *must* exist at the time a contract is made and cannot be later supplied. *See Jones v. Jones*, 63 S.W.2d 146, 152-53 (Mo. 1933).

[7]"While [mutuality of remedy] had some significance half a century or more ago, it has been quite generally repudiated, especially as the exceptions gradually swallowed it. Otherwise stated, any so-called requirement of mutuality of remedy has been largely and properly discarded by the great majority of jurisdiction." SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS section 67:39, pp. 319-20 (4th ed. 2002) (citing *Rice v. Griffith*, 161 S.W.2d 220 (Mo. 1942); *Beets v. Tyler*, 290 S.W.2d 76 (Mo. 1956)).

12

We conclude that the trial court could have found that the Defendants failed to establish that a valid arbitration agreement was formed between Baier and Darden.[8] The Defendants' first point relied on is denied.

### *Point Two*

Because the trial court could have found that no valid arbitration agreement was formed between Baier and Darden, we need not address whether the DRP is unenforceable because it is procedurally or substantively unconscionable. The Defendants' second point relied on is denied as moot.

### Conclusion

The trial court's order denying the Motion is affirmed.

_Cynthia L. Martin_____
Cynthia L. Martin, Judge

All concur

---

[8]Because the trial court could have found the essential elements of offer and acceptance were not established, it is unnecessary to address whether the trial court could also have found that the essential element of bargained for consideration was not established.