

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| **RICHARD SHARP, et al.,** | ) | |
| | ) | |
| **Respondents,** | ) | |
| | ) | |
| **v.** | ) | **WD77444** |
| | ) | |
| | ) | **OPINION FILED:** |
| **KANSAS CITY POWER & LIGHT** | ) | **January 13, 2015** |
| **COMPANY and KCP&L GREATER** | ) | |
| **MISSOURI OPERATIONS COMPANY,** | ) | |
| | ) | |
| **Appellants.** | ) | |

**Appeal from the Circuit Court of Buchanan County, Missouri**
**The Honorable Weldon C. Judah, Judge**

**Before Division Three:** Karen King Mitchell, Presiding Judge, and
Cynthia L. Martin and Gary D. Witt, Judges

Kansas City Power & Light Company and KCP&L Greater Missouri Operations Company (collectively "KCP&L") appeal the trial court's denial of their motion to stay litigation and compel arbitration, filed in response to a putative class action filed by Respondents, a group of consumers, which raised claims of breach of contract, negligence, violation of the Missouri Merchandising Practices Act, and fraud/misrepresentation, surrounding the consumers' participation with KCP&L in the Solar Energy Rebate Program. KCP&L argues that, pursuant to a dispute resolution provision found within a net-metering agreement upon which the

consumers' claims are allegedly based, the consumers were required to arbitrate their disputes before the Missouri Public Service Commission (PSC) rather than seeking relief in a court of law. But because the dispute resolution provision does not constitute an arbitration agreement, the trial court committed no error in denying KCP&L's motion to stay proceedings and compel arbitration. We affirm.

## Factual and Procedural Background[1]

In 2008, the legislature passed the Renewable Energy Standard, a statutory scheme designed to encourage the use of renewable energy sources by producers and consumers alike. § 393.1020 *et seq.*[2] Included within the new legislation was the Solar Energy Rebate Program (SERP), which required all electric utilities (subject to certain exemptions inapplicable here) to "make available to its retail customers a solar rebate for new or expanded solar electric systems sited on customers' premises, up to a maximum of twenty-five kilowatts per system." § 393.1030.3. The legislation directed the PSC and the Department of Natural Resources to "make whatever rules are necessary to enforce the renewable energy standard." § 393.1030.2. Pursuant to that dictate, the PSC promulgated 4 C.S.R. § 240-20.100,[3] which required electric utilities to make a rebate available for consumers owning or leasing solar-generated power equipment that was interconnected with the electric utility's system. In order to facilitate interconnection, the PSC required electric utilities and consumers to enter into an interconnection agreement, the terms of which were laid out in 4 C.S.R. § 240-20.065(9). One of the provisions of the form agreement created by the PSC was a dispute resolution provision, which provided:

---

[1] We defer to the trial court's express factual determinations, and we view all other facts in the light most favorable to the court's ruling. *Baier v. Darden Restaurants*, 420 S.W.3d 733, 736-37 (Mo. App. W.D. 2014).
[2] All statutory citations are to the Revised Statutes of Missouri (2000), as updated through the 2013 Cumulative Supplement, unless otherwise noted.
[3] All regulatory citations are to the Missouri Code of State Regulations, as updated.

If any disagreements between the Customer-Generator and [Utility Name] arise that cannot be resolved through normal negotiations between them, the disagreements may be brought to the Missouri Public Service Commission by either party, through an informal or formal complaint. Procedures for filing and processing these complaints are described in 4 CSR 240-2.070. The complaint procedures described in 4 CSR 240-2.070 apply only to retail electric power suppliers to the extent that they are regulated by the Missouri Public Service Commission.

*Id*.

KCP&L advertised availability of the SERP on its website and solicited participation in the program by its customers. The consumers in this appeal all applied to KCP&L to participate in the SERP. KCP&L's website advised its customers of various forms and contracts required for participation, along with a list of approved installers of solar electric systems. Among those installers was United States Solar (USS). Each of the consumers in the purported class used USS to install their solar-power systems. Among the various forms and contracts required was the net-metering agreement, which mirrored the language required by the PSC in 4 C.S.R. § 240-20.065, including the dispute resolution provision.

The consumers eventually became dissatisfied with the solar-power systems installed by USS, alleging that the systems failed to perform as they were promised, and that USS and KCP&L had breached their contractual obligations with respect to the SERP. Accordingly, the consumers filed a putative class action against KCP&L, USS, and others, alleging breach of contract, negligence, and violation of the Missouri Merchandising Practices Act. The initial pleading and a subsequent amendment both relied, in part, upon terms found within the net-metering agreement to establish KCP&L's contractual obligations. The initial pleading and first amendment both alleged that "[Plaintiffs] and all class members agreed to be bound by the Interconnection Application/Agreement for Net Metering."

3

KCP&L filed a Motion and Memorandum to Dismiss or, Alternatively, Stay Proceedings and Compel Arbitration, arguing that the PSC had primary jurisdiction over the consumers' complaints and that, in the alternative, the consumers' complaints were subject to a valid and enforceable arbitration provision in the net-metering agreement (the "dispute resolution provision"). The consumers opposed the motion, arguing that the PSC lacked jurisdiction to hear the consumers' complaints, rendering any arbitration provision unreasonable and unconscionable, and that the consumers' complaints were outside the scope of any arbitration agreement. After abundant briefing on the issue by all parties, the consumers sought leave to file a second amended petition, raising an additional claim of fraud and misrepresentation, which alleged that the consumers were fraudulently induced to enter into a contractual relationship with KCP&L and USS and that the signatures appearing on the various contracts either did not belong to or were not authorized by the consumers. The amended petition also omitted any language suggesting that the consumers "agreed to be bound" by the net-metering agreement. Though KCP&L opposed the second amended petition, the court allowed it. The court then denied KCP&L's motion to dismiss or stay proceedings and compel arbitration, finding that "a person who claims never to have seen nor signed a contract is [not] required to be bound by the terms therein." KCP&L appeals.[4]

**Standard of Review**

"A trial court's decision to deny a motion to stay proceedings and to compel arbitration is a legal conclusion that we review *de novo*." *Baier v. Darden Restaurants*, 420 S.W.3d 733, 736 (Mo. App. W.D. 2014). Any "'issues[, however,] relating to the existence of an arbitration

---

[4] "An appeal may be taken from . . . [a]n order denying an application to compel arbitration made under section 435.355." § 435.440.1(1).

4

agreement are factual and require our deference to the trial court's findings.'" *Id*. (quoting *Katz v. Anheuser-Busch, Inc.*, 347 S.W.3d 533, 539 (Mo. App. E.D. 2011)).

**Analysis**

KCP&L raises two claims on appeal premised on the court's denial of the motion to stay proceedings and compel arbitration. First, it argues that the court erred in finding that the consumers could not be bound by the net-metering agreement containing the dispute resolution provision in that the consumers, by their conduct, ratified the net-metering agreement (along with the dispute resolution provision) and agreed that the dispute resolution provision was enforceable. Second, KCP&L argues that the court erred because the consumers' complaints were within the scope of the allegedly valid and enforceable dispute resolution provision, and that this provision constitutes an agreement to arbitrate disputes before the PSC. KCP&L's second point is dispositive.

Both KCP&L and the consumers make a variety of arguments concerning the validity of the dispute resolution provision and whether the contract was ratified by the consumers' lawsuit. Ultimately, however, we need not resolve any of these issues because, even if we were to resolve all of them in favor of KCP&L, its motion to stay proceedings and compel arbitration was still properly denied because the dispute resolution provision does not constitute an arbitration agreement.

A motion to compel arbitration requires the court to consider three factors: (1) whether a valid arbitration agreement exists; (2) whether the dispute falls within the scope of the agreement; and (3) whether applicable contract principles subject the agreement to revocation. *Baier*, 420 S.W.3d at 737 n.3. As to the first factor, the consumers argue that the dispute resolution provision does not constitute an arbitration agreement simply because it does not

5

mention the word "arbitrate" anywhere within its language. KCP&L argues that an arbitration agreement need not use the word "arbitrate" and, essentially, that every "dispute resolution" provision constitutes an arbitration agreement. We believe that both parties overstate their legal authority.[5]

The parties appear to agree that, if the dispute resolution provision can be properly characterized as an arbitration agreement, it would be governed by the Federal Arbitration Act (FAA). "The FAA expresses . . . Congress's policy favoring resolution of disputes by enforcement of arbitration agreements, instead of resorting to the judicial system." *Kansas City Urology, P.A. v. United Healthcare Servs.*, 261 S.W.3d 7, 11 (Mo. App. W.D. 2008). "While courts look favorably upon clauses entitling a party to arbitration, this does not mean that a court . . . will read a right to arbitrate into a contract where, as here, the contract does not provide such a right." *Triarch Indus., Inc. v. Crabtree*, 158 S.W.3d 772, 777 (Mo. banc 2005). "A party cannot be compelled to arbitration unless the party has agreed to do so." *Kansas City Urology*, 261 S.W.3d at 11. KCP&L, "[a]s the party asserting the existence of a valid and enforceable contract to arbitrate, . . . [bears] the burden of proving that proposition." *Baier*, 420 S.W.3d at 737 (internal quotation omitted).

To support its claim that an arbitration agreement need not use the word "arbitrate," KCP&L relies on *AMF Inc. v. Brunswick Corp.*, 621 F.Supp. 456 (E.D.N.Y. 1985), and *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205 (9th Cir. 1998). In both cases, the courts noted that "'[n]o magic words such as "arbitrate" or "binding arbitration" or "final dispute resolution" are needed to obtain the benefits of the [FAA].'" *Wolsey*, 144 F.3d at 1208 (quoting *AMF Inc.*, 621

---

[5] The trial court did not resolve the question of whether the dispute resolution provision constituted an arbitration agreement. Nevertheless, appellate courts are "concerned primarily with reaching a correct result, and thus . . . do not need to agree with the reasoning of the trial court in order to affirm." *McDermott v. Carnahan*, 934 S.W.2d 285, 287 (Mo. banc 1996).

F.Supp. at 460). The cases further suggest that "'[a]rbitration is a creature of contract, a device of the parties rather than the judicial process. *If the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration.*'" *Id*. (quoting *AMF Inc*., 621 F.Supp. at 460).

We agree with KCP&L that an arbitration agreement need not specifically use the word "arbitrate" to come within the coverage of the FAA. That being said, we disagree that every "dispute resolution" provision necessarily constitutes an arbitration agreement. KCP&L relies on the Missouri Supreme Court's decision in *Johnson ex rel. Johnson v. JF Enters., LLC*, 400 S.W.3d 763, 768 (Mo. banc 2013), for the proposition that all dispute resolution provisions constitute arbitration agreements. This is not what the Court in *Johnson* held. Rather, when describing an arbitration agreement (which, incidentally, was titled "Arbitration Agreement"), the Court noted that it was "a dispute resolution clause," *as opposed to* "an agreement to loan money, extend credit or forbear from enforcing repayment or promise to extend or renew debt." *Id*. Though we agree that all arbitration agreements constitute dispute resolution provisions, the converse is not true. In other words, not all dispute resolution provisions constitute arbitration agreements—case-in-point, the dispute resolution provision at issue before us.

"Dispute resolution" encompasses not only arbitration but also negotiation, mediation, and even litigation. *See Alternative Dispute Resolution*, BLACK'S LAW DICTIONARY 91 (9th ed. 2009). And the particular provision at issue here provides for "dispute resolution" in the form of either "an informal or formal complaint," which is to be "brought to the Missouri Public Service Commission." It then identifies 4 C.S.R. § 240-2.070 as the procedural regulation governing the filing of such complaints.

7

KCP&L argues that the reference to 4 C.S.R. § 240-2.070 serves merely as a procedural mechanism for the parties to commence their rights to arbitration. We disagree. The dispute resolution provision states that "disagreements may be brought to the Public Service Commission by either party, *through an informal or formal complaint*" and then simply notes that the procedures for filing such complaints can be found in 4 C.S.R. § 240-2.070. We do not believe that the formal and informal complaint process is the equivalent of arbitration. For example, the informal complaint process does not guarantee a binding resolution for a controversy, as would arbitration; rather, it seems to provide an avenue for facilitating a negotiated resolution of a controversy. Further, even if—as KCP&L argues—the complaint procedure referenced in the provision serves merely as a mechanism for invoking arbitration—a finding we do not make—KCP&L failed to demonstrate the prerequisites necessary to invoke the PSC's authority under the dispute resolution provision in that KCP&L has filed neither a formal nor an informal complaint before the PSC.[6]

In addition, given that the dispute resolution provision was drafted by the PSC, we find it notable that the provision contains no reference whatsoever to section 386.230,[7] which is the sole authority allowing the PSC to act in an arbitration capacity. This suggests that the PSC was not

---

[6] We recognize that there does not appear to be any reason for KCP&L to have filed a complaint in this matter, given that the consumers are the ones raising the challenges. *See* 4 C.S.R. § 240-2.070(1) (providing that "[a]ny person or public utility *who feels aggrieved* by an alleged violation of any tariff, statute, rule, order, or decision within the commission's jurisdiction may file a complaint." (emphasis added)). But this fact merely solidifies our determination that the dispute resolution provision was never intended to be an arbitration agreement. For if it were intended to be an arbitration agreement, there would be no need for a complaint to be filed by the party seeking to compel arbitration, which is often—though not always—the *responding* party to a complaint.

[7] The full text of § 386.230 is as follows:

Whenever any public utility has a controversy with another public utility or person and all the parties to such controversy agree in writing to submit such controversy to the commission as arbitrators, the commission shall act as such arbitrators, and after due notice to all parties interested shall proceed to hear such controversy, and their award shall be final. Parties may appear in person or by attorney before such arbitrators.

8

intending the provision to include arbitration as a means of dispute resolution for controversies arising out of net-metering agreements.[8]

In addition, before the dispute resolution provision at issue could be treated as an arbitration agreement, the statutory prerequisites for the PSC to act as an arbitrator would have to be met. The PSC "is a body of limited jurisdiction and has only such powers as are conferred upon it by the statutes, and such incidental powers as may be necessary to enable the commission to exercise the powers granted." *Katz Drug Co. v. Kansas City Power & Light Co.*, 303 S.W.2d 672, 679 (Mo. App. 1957). Although section 386.230 gives the PSC authority to act as arbitrators, it also limits that authority to controversies between public utilities or between public utilities and persons, and only where "all the parties to such controversy agree in writing to submit such controversy to the commission as arbitrators."

The statutory prerequisite to PSC authority to act as an arbitrator, that all the parties agree in writing to submit a controversy to the commission as arbitrators, has not been met. The consumers plainly have not agreed in writing to submit the matter to the PSC. On the contrary, the consumers are vehemently opposed to arbitration before the PSC. Section 386.230 requires an agreement "*in writing* to submit [a] controversy to the commission as arbitrators." (Emphasis added.) This provision has been interpreted to mean a *post-dispute* agreement in writing. *See Shawnee Bend Dev. Co., L.L.C. v. Lake Region Water & Sewer Co.*, 18 Mo. P.S.C. 3d 466, 467 (2009) (PSC denied a request for arbitration where one of the parties disputed the existence of contractual pre-conditions to arbitration, noting that "[w]ithout the written consent of *both* parties, the Commission [could not] proceed with an arbitration.").

---

[8] Furthermore, the PSC is unlikely to ever be a party to a net-metering agreement, and we fail to discern how a non-party to a contract can ever bind parties to mandatory arbitration.

9

Here, not only have the consumers vigorously opposed arbitration but also the court below found that the consumers had not signed the contracts containing the dispute resolution provision. This is a factual finding to which we defer. *See Ferguson v. Ewing*, 437 S.W.3d 821, 824 (Mo. App. W.D. 2014). As such, KCP&L has failed to demonstrate that the parties ever agreed, either before or after the dispute, in writing to submit the controversy to the PSC as arbitrators and, therefore, has failed to invoke the PSC's arbitration authority under section 386.230.[9]

Accordingly, KCP&L has failed to meet its burden of demonstrating a valid and enforceable contract to arbitrate.

---

[9] Even if we were to accept KCP&L's ratification theory, the written agreement requirement of section 386.230 would still be unmet. Ratification means "[a] person's binding adoption of an act already completed but . . . not done in a way that originally produced a legal obligation." BLACK'S LAW DICTIONARY 1376 (9th ed. 2009). Though ratification could estop some of the consumers' legal arguments, it cannot serve as an agreement "in writing" per the requirement of section 386.230.

Furthermore, even if we were to find that the dispute resolution provision constituted an arbitration agreement and that the consumers were bound by it, we seriously question whether the PSC is permitted, under section 386.230, to arbitrate matters that are outside the scope of its statutory jurisdiction. "In construing a statute it is appropriate to take into consideration statutes involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed . . . ." *Cook Tractor Co., Inc. v. Dir. of Revenue*, 187 S.W.3d 870, 873 (Mo. banc 2006). Under section 386.250(6), the PSC has jurisdiction to adopt rules "which prescribe the conditions of rendering public utility service, disconnecting or refusing to reconnect public utility service and billing for public utility service." Section 386.250 does not give the PSC jurisdiction to construe or annul contracts, award damages, construe the Missouri Merchandising Practices Act, or adjudicate individual tort claims. *See Katz Drug Co. v. Kansas City Power & Light Co.*, 303 S.W.2d 672, 679 (Mo. App. 1957); *see also Wilshire Constr. Co. v. Union Elec. Co.*, 463 S.W.2d 903, 905 (Mo. 1971) ("The Public Service Commission cannot enforce, construe []or annul contracts, nor can it enter a money judgment.") (internal quotation omitted). "While administrative regulations are entitled to a presumption of validity and may not be overruled except for weighty reasons, [t]he rules or regulations of a state agency are invalid if they are beyond the scope of authority conferred upon the agency, or if they attempt to expand or modify statutes." *Union Elec. Co. v. Dir. of Revenue*, 425 S.W.3d 118, 124-25 (Mo. banc 2014) (internal quotation and citation omitted). We do not believe that the PSC, by regulation in the form of a dispute resolution provision, can expand its statutory jurisdiction to act. *See, e.g.*, *Shawnee Bend Dev. Co., L.L.C. v. Lake Region Water & Sewer Co.*, 18 Mo. P.S.C. 3d 466, 468 (2009) (stating that "Section 386.230, RSMo, cannot give the Commission authority to hear controversies beyond its jurisdiction."); *but see In re Arbitration between Kauffman and Capital City Water Co.*, 21 Mo. P.S.C. 537 (1977) (PSC arbitrated a controversy wherein the question was one of negligence and resulting damages despite having dismissed earlier complaint for lack of jurisdiction).

10

## Conclusion

The trial court did not err in overruling KCP&L's motion to stay proceedings and compel arbitration.  Its ruling is affirmed.

_____
Karen King Mitchell, Presiding Judge

Cynthia L. Martin and Gary D. Witt, Judges, concur.

11